COLE COUNTY, Missouri and the County Court of Cole County, Missouri, Appellants,

v.

BOARD OF TRUSTEES OF the JEFFERSON CITY FREE LIBRARY DISTRICT and Roy A. Scheperle Construction Company, Respondents.

No. KCD 28373.

Missouri Court of Appeals, Kansas City District.

Dec. 27, 1976.

James F. McHenry, Ronald J. Prenger, Jefferson City, for appellants.

Thomas D. Graham, T. Christopher Graham, Jefferson City, for respondents.

Before DIXON, P. J., PRITCHARD, C. J., and WASSERSTROM, J.

WASSERSTROM, Judge.

Plaintiff Cole County filed this condemnation suit to acquire property in Jefferson City, Missouri, owned by defendant Board of Trustees of the Jefferson City Free Li-

brary District. As part of its petition, the County sought a temporary restraining order to enjoin the defendant Board and its contractor Roy A. Scheperle Construction Company from proceeding with a proposed demolition of building improvements located on the tract, and a restraining order was issued by the trial court. The defendant Board filed a motion to dismiss on the ground that the County had no right to condemn property already being used for a public purpose. After a bench trial, the trial court sustained the motion and ordered the petition dismissed; however, the restraining order was continued in effect pending appeal. The County pursues this appeal from the order dismissing its petition. We affirm.

The property in question is the site of a library building which had been occupied by the Board and used as a free public library for more than 70 years. In 1966 the Thomas Jefferson Regional Library District was formed, composed of the library districts of Jefferson City and the Counties of Cole, Miller, Maries and Osage. See § 70.210(2). (All statutory references are to RSMo 1969.) In the same year, a consulting firm was hired to make a study to determine future needs for library services in Jefferson City and surrounding areas. The consulting firm recommended a new and larger library building and that it be accompanied with parking facilities.

Pursuant to that recommendation, the Board did construct a new library building just to the south across a narrow street (also sometimes known as Hog Alley) from the old library building. The Board took occupancy of the new building in 1974. The offices of the Regional Library are located in this new Jefferson City library building and all employees in the Jefferson City library are paid from district funds.

Early in 1975, the Board took up the question of what to do with the old building and moved to demolish that building for the purpose of creating a parking lot to serve the new building. To this end, the Board advertised for bids on the demolition of the old building and creation of a parking lot, the bids to be opened February 28, 1975.

At about this time, some public concern began to be voiced in favor of saving the old building. The City Council of Jefferson City held a meeting to which representatives of the Board were invited to explore the subject. At this meeting, the City Council asked the Board to determine the value of the old building by calling for purchase bids on it. In response to that request, the Board did advertise publicly for such bids and set the date for opening of these bids on February 28, 1975, the same date that the construction bids were to be opened.

The County was interested in acquiring additional space for its own purposes and therefore submitted a bid to purchase the old library building, which proved to be the only such bid. On February 28, the construction bids and the sole bid to purchase were opened at the same time. The bid from Scheperle for demolition of the old building and parking lot construction was then accepted. However, before Scheperle could begin its demolition work, the County commenced the present lawsuit and obtained its temporary restraining order.

■ The Points Relied Upon set forth in the County's brief consist solely of abstract statements of law, thereby violating Rule 84.04. However, the dispute here is between public bodies, pertains to public property and directly involves the public interest. In addition, the issues as set forth in the arguments of the parties are simple and sharp. Under these special circumstances, the requirements of Rule 84.04 will be suspended in this case.

The County concedes in its brief that "[a]s a general rule, property already devoted to a public use cannot be taken for another public use which will totally destroy or materially impair or interfere with the forever [sic] use, unless the intention of the legislature that it should be so taken has been manifested in express terms or by necessary implication, were [sic] general authority to exercise the power of eminent domain being in such case insufficient."

This concession is of course forced by the square holding to that effect in *State ex rel. State Highway Commission v. Hoester,* 362 S.W.2d 519, 522 (Mo. banc 1962). See also to the same effect *Kansas City v. Ashley,* 406 S.W.2d 584 (Mo.1966). The County further concedes that its statutory authority for condemnation, § 49.300, grants a "mere general authority to exercise the power of eminent domain" which *Hoester* holds insufficient to permit the taking of property already devoted to a public use.

■ The County contends, however, that this case falls within two exceptions to the foregoing rule. The first exception upon which it relies is that property which was originally acquired for a public use, but which has subsequently been abandoned, may be taken under a general power of eminent domain. The application of this exception requires of course a showing that the Board has abandoned the old library building.

It is well established that in order to show abandonment, an intention to abandon must be proved. Intention is the first and paramount object of inquiry, for there could be no abandonment without the intention to abandon. *In re Clark's Estate,* 213 S.W.2d 645, 651 (Mo.App.1948); *Northwest Missouri State Fair, Inc. v. Linville,* 448 S.W.2d 274, 279 (Mo.App.1969); *Wirth v. Heavey,* 508 S.W.2d 263, 267 (Mo.App. 1974). Such an intention may be inferred only from strong and convincing evidence. *Gibson v. Sharp,* 277 S.W.2d 672, 679 (Mo. App.1955).

In an effort to comply with this requirement, the County relies upon the Board's solicitation of public bids for purchase of the property. As stated in the County's brief: "It is the position of the appellants that the offering of the property for sale by public bid, after the advertisement for demolition bids, indicated a clear abandonment of the public nature of the use of the property." That argument carries no persuasion. The actual intention of the Board in soliciting these bids for purchase was convincingly explained by Mr. Priddy, the Board's president, in his testimony that the

sole purpose for that solicitation "was to meet the requests of those [the City Council of Jefferson City] who had asked us to determine the value of the property." Priddy also testified that the Board never at any time took any action to set aside their intention to turn the old area into a parking facility for use in connection with the new library building. In the face of this evidence, the County wholly failed to carry its burden of proving an intention on the part of the Board to abandon the property in question.

■ For its second claimed exception to the general rule, the County argues that parking is not necessary to the Board's purposes and cannot be considered as a public library function. This argument also must be rejected.

The functions of the Library Board are set forth in § 182.200. Subsection 4 provides that the Board shall have control of funds for "the construction of any library building, and of the supervision, care and custody of the grounds, rooms or buildings constructed, leased, or set apart for that purpose." Subsection 5 authorizes the Board to "purchase or lease grounds, purchase, lease, occupy or erect an appropriate building or buildings for the use of the public library and branches thereof * * *." These provisions do not contain any specific mention of off street parking facilities. Nevertheless, the right to acquire, hold and operate facilities for that purpose must be implied in order to permit an effective performance of the Board's purposes.

Decisions of the Missouri Supreme Court and the courts of a number of other states support that implication. In *State ex rel. Curators of the University of Missouri v. Neill,* 397 S.W.2d 666 (Mo. banc 1966) the Missouri Supreme Court, sitting en banc, dealt with the question of whether the University had the power to issue revenue bonds for the money necessary to defray the costs of parking facilities, and thus, whether the Curators had the power to construct parking facilities. Both questions were answered in the affirmative. Noting

that it is the clear intent of the constitution and statutes to confer on the Curators the authority to select sites, acquire real estate, and construct improvements thereon in order to carry out the functions of the University, the Court stated at l.c. 670:

"It is too late in the motor age to contend successfully that parking facilities are not a necessary adjunct of the proper use of improved real estate. One does not have to travel far to see their inevitable presence at modern shopping centers, factories, schools, churches, apartments and even private residences. A place to park an automobile is indispensable to its use. The larger businesses and institutions find it necessary to provide parking facilities for the persons with whom they deal since streets are no longer adequate or available for that purpose."

A New Jersey court came to a similar conclusion with regard to the acquisition of a parking lot in connection with a county courthouse, in *County of Essex v. Hindenlang,* 35 N.J.Super. 479, 114 A.2d 461, 465 (1955):

"The acquisition' and maintenance of a parking area fon the use of county officers and employees, and for those connected with the courts or who come on county business, is a necessary and reasonable adjunct to the acquisition and maintenance of a courthouse and administration building. True, authority to condemn for such a parking area has not been conferred upon counties in express words, but the power is certainly one that can be implied from the specific grant contained in R.S. 40:32–2 and 3, N.J.S.A. The statutory language is broad enough to comprehend such an implied power.

     \*     \*     \*     \*     \*     \*

"The condemnation of lands for a parking area for public buildings is plainly a power that is 'of necessary or fair implication, or incident to the powers expressly conferred [to purchase, erect or otherwise acquire and maintain public buildings—R.S. 40:32–3, N.J.S.A.] or essential thereto.'"

A case dealing with the implication of the power to maintain parking lots, closely analogous to the case at bar, is *In re Condemnation by the School District of Pittsburgh,* 430 Pa. 566, 244 A.2d 42 (1968), in which the Pennsylvania Supreme Court upheld the right of the Board of Education to condemn property for parking facilities. Citing *Missouri ex rel. Curators of the University of Missouri v. Neill, supra,* the Pennsylvania Supreme Court stated: "We think that the acquisition of land for off street parking for school district facilities, including an administration building, is for a 'proper school purpose.' . . . Since automobiles are a necessary incident to the operation of school district facilities, off street parking is a practical necessity. The streets simply are not adequate and sometimes are not available for parking. Consequently, the acquisition of land for off street parking, which is a practical necessity to the effective and efficient operation of a school system, is certainly a 'proper school purpose.' To interpret the statute any more narrowly would be to frustrate its obvious intent to delegate to the Board authority to discharge the legislature's constitutional obligation to provide for an efficient public school system." See also *City of Spring Valley v. Southwestern Bell Telephone Company,* 484 S.W.2d 579, 581 (Tex. 1972), holding that a parking lot is a necessary adjunct to a central office building of a utility company for purpose of zoning exemption, and *City of Phoenix v. McCullough,* 24 Ariz.App. 109, 536 P.2d 230, 232 (1975) determining that off street parking is necessary to the operation of an airport. The clear trend in the courts is to find that the power to create parking lots is a necessary implication of the power to create public buildings.

A library is a public institution and the library building in question is a regional library facility which serves not only the residents of Jefferson City, but also the residents of Cole, Maries, Miller and Osage Counties. Part of this service is via bookmobiles, but the library itself is open to all residents of the area as well, and serves as

the administration unit for the entire regional library. In addition, it includes a special multi-purpose room and many activities and programs are held in the building which attract people from the surrounding area. It seems reasonable to conclude that in the present day when the automobile is the dominant mode of transportation, the power to create and maintain a public library building and grounds includes the power to build and maintain a parking lot.

The County includes in its argument a contention that parking for the new library building should not be considered a necessary public use because of the existence of street parking and other off street parking facilities more or less nearby in the neighborhood. The desirability and necessity of additional parking adjacent to the new library building is a question of fact to be determined by the Board itself in the first instance and should not be disturbed by a court unless the decision was "brought about by fraud or corruption, or is so manifestly wrong and prejudicial to the public as to create a conviction that it was the result of fraud and disregard of public duty." *Everett v. County of Clinton,* 282 S.W.2d 30, 37 (Mo.1955). See also *County of Essex v. Hindenlang, supra,* 114 A.2d 461, l.c. 469. The County has wholly failed to prove any disregard of public duty on the part of the Board within the contemplation of the above rule.

Affirmed with direction to the trial court to dissolve the temporary restraining order.

All concur.