Clarence M. HOUSTON and Florence L.
Houston, his wife,
Plaintiffs-Appellants,

v.

COLUMBIA FEDERAL SAVINGS AND
LOAN ASSOCIATION, d/b/a Farm and
Home Savings Association, Defendant-
Respondent.

No. 38443.

Missouri Court of Appeals,
St. Louis District,
Division Three.

May 16, 1978.

Motion for Rehearing and/or Transfer
Denied July 14, 1978.

Application to Transfer Denied
Sept. 12, 1978.

John E. Keath, Campbell & Campbell, David L. Campbell, Clayton, for plaintiffs-appellants.

Brackman, Copeland, Oetting, Copeland, Walther & Schmidt, Robert W. Copeland, Stefan J. Glynias, Clayton, for defendant-respondent.

WEIER, Judge.

Plaintiffs obtained a jury verdict for $10,000 in actual and $25,000 in punitive damages for defendant's alleged conversion of plaintiffs' personal property removed from a building owned by defendant. The trial court set aside the verdict and entered judgment for defendant in accordance with its motion for directed verdict and in the alternative, sustained defendant's motion for a new trial. We affirm the judgment of the trial court granting defendant's motion for a judgment notwithstanding the verdict because plaintiffs failed to make a submissible case.

On August 21, 1970, Columbia Federal Savings and Loan Association [1] and Jacqueline E. Finch entered into a "commercial lease" agreement for use of the premises owned by defendant located at 3746 Grandel Square in St. Louis. The premises were to be used and occupied by Renaissance Catering of which Ms. Finch was president and the registered agent. The lease agreement specifically prohibited the assignment of the lease and the subletting of the premises. The lease limited occupancy of the property to "Tenants own use."

On December 20, 1970, plaintiffs Florence and Clarence Houston, the parents of Jacqueline Finch, moved into the building with all their furniture and personal belongings, some of which was placed on the second floor with the remainder stored in the basement. Renaissance Catering Company occupied the first floor of the three-story building. Jacqueline Finch apparently lived there when her parents moved in the building. No one informed defendant of plaintiffs' move and defendant had no knowledge they lived at the premises.

Jacqueline Finch fell behind in rental payments. Between January and March of 1971 defendant sent her several letters demanding rent and finally on March 30, 1971, defendant notified her that in ten days it would exercise its option to declare the lease forfeited for nonpayment of rent. On May 21, 1971, defendant obtained a judgment in the magistrate court against Jacqueline Finch (who had been personally served with a summons) for $1400, possession of the premises and costs.

In mid-August, 1971, Mr. and Mrs. Houston left the building, moved in with a daughter on Elmbank Avenue, and subsequently returned to a building owned by them at 4134 Margaretta. They did not, however, remove their furniture and belongings from defendant's premises because they "didn't have any place to put it" and "didn't know where to take it, or what to do with the stuff."

Defendant contacted Grass Moving and Storage [2] to assist in the removal of property from the premises. The defendant did

---

1. Columbia Federal Savings was subsequently merged into Farm and Home Savings Association, with the latter institution acquiring the assets and assuming the obligations of the former. For simplicity in the disposition of this appeal, we shall continue to refer to defendant as Columbia Federal Savings.

2. At the close of their evidence plaintiffs dismissed Count II of their petition naming Grass Moving Company as a defendant.

not investigate as to whether other persons had been living on the premises. However, upon entry the premises were found without electricity, with food rotting in the refrigerators, and with no one living therein. For three days, commencing on September 15, 1971, all property was removed from the building, in the presence of the sheriff and a bank officer. The sheriff ordered the movers to store the property rather than leave it on the public sidewalk.

On one occasion during the three-day evacuation Kenneth Houston, the son of plaintiffs, arrived at the premises to obtain insurance papers for his father and observed the building's contents being removed. He informed the sheriff about the nature of his business at the building. Although he did not apprise anyone that his parents had been living there he did state to the sheriff that his parents' possessions were in the building. Kenneth testified that his purpose in coming to the premises was not to preserve his parents' furnishings, but in any event, the sheriff and an employee of defendant told him that he could not remove them.

Clarence and Kenneth Houston subsequently asked the sheriff and Grass Moving about plaintiffs' property. In December, 1971, Mr. and Mrs. Houston, Kenneth Houston and Jacqueline Finch met at Columbia Federal Savings with the bank's president and requested the return of plaintiffs' property. The bank maintained that the Houstons would have to go to the warehouse and identify their property, separate it from the other furnishings removed from the building, and pay the cost of moving it to their present residence. The Houstons, however, refused to pay any costs. They also "wouldn't go to the storage company and separate their belongings from their daughter's . . ." apparently because they did not want to pay to have their belongings moved.

In a declaratory judgment action brought by defendant, the circuit court on February 27, 1976, determined which pieces of the property removed from defendant's premises belonged to plaintiffs and which belonged to Jacqueline Finch. On March 12, 1976, the court amended that order by compelling plaintiffs to identify the miscellaneous boxes and their contents claimed by plaintiffs. On March 25, 1976, defendant's attorney sent a letter to plaintiffs' attorney requesting that plaintiffs pick up their property at the warehouse. On April 12 plaintiffs' attorney wrote back saying plaintiffs "have no intention of coming to the warehouse to pick up the property" and that they "will accept return of the property only upon delivery by you at a place to be designated by our clients . . ." Defendant's attorney responded in a letter dated April 14 that defendant "may be willing to pay the delivery charges for your clients, however at this time your clients have still to identify which boxes they claim as theirs per the Court's Order." This letter went on to say that after the property is identified defendant can then "have an estimate made as to what the expense would be in delivering the property to your clients, and thereafter make a determination as to whether or not [defendant] is willing to pay that delivery cost." Defendant's attorney sent another letter to plaintiffs' attorney on May 12, 1976, offering to deliver the property to plaintiffs at defendant's expense but plaintiffs' attorney testified he never received it. Mr. Houston acknowledged that his lawyer advised him that defendant wanted to give the property back to him and his wife. He said they did not get the property back because "I don't have any place to put it" and "I haven't had the facility to pick it up." Plaintiffs never identified the contents of the boxes referred to in the amended court order in the declaratory judgment suit prior to the trial which began on May 26, 1976, because Mrs. Houston was not physically capable of going to the warehouse and Mr. Houston was not "able to."

On appeal plaintiffs raise several points and numerous subpoints alleging trial court error in entering judgment for defendant notwithstanding the verdict for plaintiffs or alternatively sustaining defendant's motion for new trial. On review we first consider whether plaintiffs made a submissible case

of conversion by reviewing the evidence and all permissible inferences therefrom in the light most favorable to plaintiffs. *Smith v. Allied Supermarkets, Inc.*, 524 S.W.2d 848, 852[3] (Mo.banc 1975); *Ogle v. Terminal R.R. Ass'n. of St. Louis*, 534 S.W.2d 809, 811[2] (Mo.App.1976).

■■■ Conversion is the unauthorized assumption of the right of ownership over the personal property of another to the exclusion of the owner's right. *Wirth v. Heavey*, 508 S.W.2d 263, 267[3] (Mo.App.1974). Proof of conversion can be shown either by: (1) a tortious taking, or (2) by any use or appropriation to the use of the person in possession, indicating a claim of right in opposition to the rights of the owner, or (3) by a refusal to give up possession to the owner on demand. *Arnold v. Prange*, 541 S.W.2d 27, 30[3] (Mo.App.1976).

■■■ We examine those required elements of proof in the order stated. Plaintiffs contend that a submissible case of "tortious taking" was made because defendant unlawfully came into possession of their property in that notice of eviction was given only to Jacqueline Finch and § 535.020 RSMo. 1969 required notice be given to them as well.[3] If this statute requires that the landlord serve not only the person whose name appears on the lease but also every other person occupying the rented premises before the landlord can obtain a valid judgment to recover possession, the landlord would be required to serve all friends, acquaintances and relatives (young and old) of the lessee who were residing on the premises even if these people never had any relationship or contact with the landlord and the landlord never knew they were there. We do not believe the legislature intended such an unreasonable requirement.

Chapter 535, RSMo.1969, is entitled "Landlord-Tenant Actions in Magistrate Court." The chapter contains provisions for a summary procedure available to landlords to obtain a judgment for delinquent rent and for possession of the rented premises. The first section of the chapter, § 535.010, establishes that "it shall be lawful for the landlord to dispossess the tenant and all subtenants . . . in the manner herein provided." Note that this section does not mention "all persons occupying the premises" as is true of §§ 535.020 and 535.-040. For recovery to be had in a suit for rent and possession under § 535.020 a landlord and tenant relationship must be shown. *Davis v. Bradford*, 308 S.W.2d 363, 366[4] (Mo.App.1957). In the chapter are also sections (535.070, 535.080 and 535.090) which are applicable to a situation where a purchaser of land to whom no attornment has been made by a delinquent tenant and the purchaser seeks to obtain possession only. This is a separate action from the one described in § 535.020, requiring different averments in the petition and proof. *Barclay v. Wyatt*, 223 Mo.App. 1022, 14 S.W.2d 44 (Mo.App.1929). But the relationship of the parties in such a case is one arising out of the prior relationship of landlord and tenant. Because Chapter 535, RSMo. 1969 treats only of landlord-tenant relationships and § 535.020 sets out a statutory proceeding for recovery of delinquent rent and possession from tenants or subtenants, we hold that requirements of notice to "tenant or lessee and to *all persons occupying the premises*" (emphasis added) therein means only those persons who bear a relationship of tenant or subtenant to the landlord and

---

3. Section 535.020 RSMo. 1969 provides:

"Whenever any rent has become due and payable, and payment has been demanded by the landlord or his agent from the lessee or person occupying the premises, and payment thereof has not been made, the landlord or his agent may file a statement, verified by affidavit, with any magistrate in the county in which the property is situated, setting forth the terms on which said property was rented, and the amount of rent actually due to such landlord; that the same has been demanded from the tenant, lessee or person occupying the premises, and that payment has not been made, and substantially describing the property rented or leased; *and thereupon such magistrate shall issue a summons directed to such tenant or lessee and to all persons occupying the premises by name requiring them to appear before him upon a day to be therein named,* and show cause why possession of the property should not be restored to the plaintiff." (Emphasis added.)

not to others who might be there as invitees, business or social, of the tenant or subtenant.

■ Because defendant recovered possession of the building pursuant to a valid judgment,[4] the removal and storage of plaintiffs' property was not a "tortious taking" but a lawful one. Storing the property rather than leaving it on the street was permissible and reasonable. This alone does not demonstrate a tortious taking and also fails to prove conversion. "The bare removing of one's chattel from one spot to another, without denying his ownership, but on the contrary acknowledging it, cannot be a conversion." *Sparks v. Purdy*, 11 Mo. 142, 145 (1847).

■ Plaintiffs do not allege, and the evidence failed to show, the second method of proof of a conversion: use which indicated a claim of right contrary to the owner's rights. Defendant reasonably put into storage all the items found on its premises, and gave access to plaintiffs to identify and separate their articles from those in storage. There was no evidence that defendant detained plaintiffs' personal belongings for its own use or disclaimed plaintiffs' ownership. The evidence disclosed that defendant made no use of plaintiffs' property.

■ Having failed to find either one of the first two means of proving conversion, we turn to the third: a demand by the owner and refusal. "[I]f possession was not acquired by a tortious taking or the possessor does not appropriate or use the property in a fashion to indicate a claim thereto adverse to the owner, then no evidence of a conversion exists until there is proof, first, that a proper demand for possession was made by one who is entitled thereto and, second, that the possessor wrongfully refused delivery." *Glass v. Allied Van Lines, Inc.*, 450 S.W.2d 217, 221[7] (Mo.App.1970). Plaintiffs' "demand" in the instant case did not apprise defendant of the specific articles claimed by them. Defendant's request of plaintiffs to separate and identify their belongings went unheeded. A court judgment was necessary to delineate which arti-

cles of the group in storage belonged to plaintiffs. Further, plaintiffs' own testimony revealed that the reason they were not in possession of their property was that they had no facility to retrieve it or any place to put it. It has been stated that "[a] demand is insufficient which would require for compliance therewith that the person on whom it is made transport or carry the chattel to the owner." 89 C.J.S. Trover and Conversion § 58, pp. 561–562. The evidence proved that plaintiffs' own conduct caused their property to remain with defendant. No proper demand for the return of specific identifiable property was made by plaintiffs, and, therefore, no refusal for such was demonstrated by defendant's actions. Again, plaintiffs' evidence failed to prove a conversion by defendant.

The judgment of the trial court sustaining defendant's motion for judgment notwithstanding the verdict is affirmed.

GUNN, P. J., and KELLY, J., concur.

---

4. The judgment in favor of defendant in the rent and possession case was not appealed.