**Billy Joe KNIGHT,**
**Plaintiff-Respondent-Appellant,**

v.

**M.H. SIEGFRIED REAL ESTATE, INC.,**
**Defendant-Appellant-Respondent.**

Nos. WD32960, WD32977.

Missouri Court of Appeals,
Western District.

Dec. 28, 1982.

Motion for Rehearing and/or Transfer to Supreme Court Overruled and Denied March 1, 1983.

Application to Transfer Denied April 26, 1983.

Hugh F. O'Donnell, Independence, for plaintiff-respondent-appellant Knight.

Steven M. Gray, Independence, for defendant-appellant-respondent M.H. Siegfried Real Estate, Inc.

Before SHANGLER, P.J., and PRITCHARD and DIXON, JJ.

DIXON, Judge.

M.H. Siegfried Real Estate Co., defendant below, appeals from a jury verdict assessing actual and punitive damages against it for conversion of a pickup truck. Respondent Knight cross appeals, claiming that his charge of conversion of a sum of money should have been submitted to the jury.

Billy Jo Knight rented some farm land from M.H. Siegfried Real Estate Co. The lease was not to expire until the last day of March, 1977, but Knight moved off the land in late February or early March of that year leaving behind various pieces of farm equipment, including a 1969 Ford pickup truck. Over the next several months, Mr. Siegfried wrote Knight several letters requesting that "debris and old cars" be removed from the premises. On June 29, 1977, M.H. Siegfried paid to have the pickup towed from the farm lot to the parking lot of the defendant, where it remained for one-half day. The truck was then parked in the back yard of Cedric Siegfried's house. Siegfried was president and chief managing officer of the defendant corporation. Thereafter, M.H. Siegfried filed suit in the magistrate court for costs in removing debris from the leased premises. The early litigation is pivotal to an understanding of the issues in the present case and the proceedings in that litigation will, therefore, be detailed to the extent necessary. The date of filing in the magistrate court does not appear, but the trial was August 8, 1977. M.H. Siegfried recovered a judgment for $945.00. No supersedeas bond was filed but an appeal was perfected by Knight. In October of 1977, the sheriff, acting under authority of an execution issued upon the magistrate court judgment, seized the pickup at "23rd & Sterling." Knight bought the truck at the execution sale in October. In November, the Circuit Court of Jackson County heard the de novo appeal of Knight from the magistrate court judgment. The magistrate court judgment was reduced a net amount of $590.00. M.H. Siegfried received $945.00 from the execution sale of the pickup truck. Although demand was made, no part of the money was ever paid

Knight. Two and one-half years later, the instant suit was filed in two counts. One count was for conversion of the truck and one count was for conversion of the funds arising from the execution sale of the truck. Both counts contained allegations and a prayer for punitive damages. After trial before a jury, the court directed a verdict for Knight in the amount of $590.00 on a theory of money had and received, that amount being the excess above the final award obtained by M.H. Siegfried, but never returned to Knight. The jury returned a verdict in Knight's favor on his claim for conversion of the pickup truck, awarding actual and punitive damages.

■ M.H. Siegfried first asserts that Knight's cause of action for conversion of his pickup truck is barred because it was not asserted as a mandatory counterclaim in the 1977 judicial proceedings. A determination that the conversion claim was a mandatory counterclaim under Rule 55.-32(a) would be dispositive of this issue on appeal, because failure to assert a mandatory counterclaim forever bars the claimant from having that claim heard. *State ex rel. Davis v. Moss,* 392 S.W.2d 260 (Mo. banc 1965); *Harris v. Nola,* 537 S.W.2d 636 (Mo. App.1976).

■ Conversion of the pickup truck did arise out of the same "facts and circumstances constituting the foundation" of the earlier lawsuit, *Harris v. Nola, supra* at 639, so the claim would fall within the broad meaning given "transaction or occurrence" for purposes of the compulsory counterclaim rule. There is no contention that Knight's claim falls within any other express exclusions. An implicit requisite to the compulsory counterclaim rule, however, is that the claim to be asserted as a counterclaim be "matured" at the time of serving the pleading. *Magna Pictures Corp. v. Paramount Pictures Corp.,* 265 F.Supp. 144, 152 (C.D.Cal.1967) (Fed.R.Civ.P. 13(a) is identical to Rule 55.32(a)); *Harris v. Nola, supra* at 638. Knight's claim for conversion of his pickup truck, then, must have matured by the time his responsive pleading to M.H.

Siegfried Realty's petition in magistrate court was due. The later retrial de novo in circuit court is immaterial to the calculations, because a counterclaim could not be raised for the first time in circuit court on appeal from the magistrate court. Section 512.290 RSMo 1969 (repealed).

■ There is no authority directly ruling on the word "mature" as it is used in the Rule. *Cf. Niedringhaus v. Zucker,* 208 S.W.2d 211 (Mo.1948). Section 516.100 RSMo 1978 says that a cause of action accrues "when the damage resulting therefrom is sustained and is capable of ascertainment." Cases have further defined accrual as when "there exists the right of the injured party to bring and maintain a claim in a court of law," *Excel Drug Co. v. Missouri Dept. of Revenue,* 609 S.W.2d 404, 409 (Mo. banc 1980), and when it is within claimant's power to prosecute a suit to successful judgment. *DePaul Hospital School of Nursing, Inc. v. Southwestern Bell Telephone Co.,* 539 S.W.2d 542 (Mo.App.1976). *See also Renfroe v. Eli Lilly & Co.,* 686 F.2d 642, 647–48 (8th Cir.1982). In a conversion action against a collecting bank, which honored a check over a forged payee's signature, the Missouri Supreme Court construed § 516.100 to mean not that accrual is postponed until discovery of the wrongful act, but when the damage is sustained and capable of ascertainment. "The failure to discover the wrongful act does not prevent the accrual of the action after the damage is sustained and is capable of ascertainment, *unless, of course, the discovery is prevented by fraud or deception." Chemical Workers Basic Union v. Arnold Savings Bank,* 411 S.W.2d 159, 164 (Mo. banc 1966) (per curiam on motion for rehearing) (emphasis added). There does not seem to be any logical impediment to construing "matured" as "accrued" for the purposes of the compulsory counterclaim rule and such a determination is supported by the rationale of the case law applying the word accrued in the limitation problems.

■ Turning to the facts of the instant case, it must be determined when conversion of the pickup truck was accomplished. M.H. Siegfried had the right to remove the truck from the premises as it did, some three months after the expiration of Knight's lease. *See* Annot., 23 A.L.R.2d 655 (1952). M.H. Siegfried did not, however, have the right to "store" the truck in Cedric Siegfried's back yard and thereafter refuse to reveal its whereabouts to Knight. Whether M.H. Siegfried's actions amounted to an unauthorized assumption of the right of ownership over the personal property of another to the exclusion of Knight's right of ownership can be proven by showing: (1) a tortious taking, or (2) by any use or appropriation to the use of the person in possession, indicating a claim of right in opposition to the rights of the owner, or (3) by a refusal to give up possession to the owner on demand. *Houston v. Columbia Federal Savings & Loan Assoc.,* 569 S.W.2d 211 (Mo.App.1978).

Knight must hang his theory of conversion on the third method outlined above, because there was no evidence of use by M.H. Siegfried or Cedric Siegfried of the truck, nor as mentioned, was the taking tortious. Thus, Knight's cause of action for conversion of the truck would not accrue for purposes of determining whether it was a mandatory counterclaim in the 1977 lawsuit until Knight made a demand for the truck and was denied its return by appellant.

■ It appears from the trial transcript that Knight, upon finding his truck missing from the farm lot in late June, contacted the M.H. Siegfried office several times to inquire as to the truck's whereabouts. He apparently was not allowed to speak directly to Siegfried, and the secretary to whom he spoke denied any knowledge of the matter. Knight testified that he left an address and phone number with the Siegfried office, but was never provided the information necessary to retrieve his truck. The 1977 lawsuit was filed in July and judgment entered on August 8 against Knight in magistrate court. From these facts, it can be inferred that M.H. Siegfried knew that Knight was seeking the return of his truck but refused to provide him the information

that would have formed the basis of a mature counterclaim. Siegfried's answers to interrogatories on behalf of M.H. Siegfried and his trial testimony show that evasion of the disclosure of the truck's location was central to the plan to realize on the magistrate court judgment by execution. Also in evidence was the memorandum of the conversation by defendant's lawyer with the police in which disclosure of the location of the truck was evaded. That memorandum also discloses that long after the magistrate court judgment Knight did not know where his truck was and had reported it as stolen. The harshness of the compulsory counterclaim rule should not deprive respondent of a remedy under these circumstances—where discovery of the damage is prevented by fraud or deception. *Chemical Workers Basic Union, supra* at 164.

■ The jury's verdict in favor of Knight on his claim for conversion of the pickup truck can be accorded only limited review on appeal. It is true, as Siegfried contends, that abandonment is a complete defense to an action for conversion of personalty. *Wirth v. Heavey,* 508 S.W.2d 263 (Mo.App.1974). The jury determined, however, that Knight did not abandon his pickup. Appellate review, then, is limited to ascertaining whether there was substantial evidence in support of the jury's conclusion. *Machens v. Machens,* 263 S.W.2d 724 (Mo. 1953). Moreover, the evidence is viewed in the light most favorable to the jury's verdict. *Bayne v. Jenkins,* 593 S.W.2d 519 (Mo. banc 1980); *Fowler v. Daniel,* 622 S.W.2d 232 (Mo.App.1981).

■ The evidence in the record is substantial that Knight never intended to abandon his pickup. Knight testified that, although he left the truck on the land leased from Siegfried Realty after his lease had expired, he checked on the truck every week, filed a police report on finding the truck missing in June, and contacted Siegfried's office several times inquiring as to the truck's whereabouts. Knight retained possession of the keys to the truck. *Compare Graff v. Triple B. Development Corp.,* 622 S.W.2d 755 (Mo.App.1981). Although

there was evidence from which the jury could have inferred an intent to abandon, the jury disbelieved such evidence. The jury determines questions of the credibility of the witnesses and conflicts in testimony, and the court is even more unlikely to disturb the jury's verdict where M.H. Siegfried had the burden of showing abandonment, *Wilson v. Wheeler Farms, Inc.,* 591 S.W.2d 287 (Mo.App.1979), and where the intent to abandon can be inferred only from strong and convincing evidence. *Cole County v. Board of Trustees,* 545 S.W.2d 422 (Mo.App.1976).

■ The evidence of malice, arising from the same evidence recited above with respect to the maturity of the counterclaim, was sufficient to support submission of MAI 10.01.

■ M.H. Siegfried next complains that the trial court committed error in allowing its attorney in the 1977 litigation to testify. Section 491.060(3) RSMo 1978 declares that an attorney is an incompetent witness as far as testimony concerning communications between the attorney and client is concerned. The client, however, holds the attorney client privilege and can waive it by taking the stand and testifying himself about privileged communications. *Johnson v. State,* 479 S.W.2d 416 (Mo.1972). The trial judge permitted respondent on direct examination to question the former attorney about two privileged matters: any conversations the former attorney may have had as to how Knight's truck got from Siegfried's back yard to the street where it was levied on, and instructions Siegfried may have given the former attorney about insuring that the bids at the execution sale of the truck covered the amount of the judgment against Knight. The trial court permitted this questioning on the ground that appellant, through Siegfried, had testified about those two matters, thereby waiving the privilege.

■ Siegfried was called as a witness by the plaintiff and although the plaintiff did not state that he was calling him as an adverse party, the direct examination was

conducted largely in the form of cross examination. Siegfried was a cautious witness, careful and precise in his answers. He paried most of the questions concerning discrepancies in his interrogatory answers with skill and precision demonstrating his understanding of the proceedings and his experience as an attorney. During his examination on points that were detrimental to his position, he was careful to respond only to the direct question and to avoid volunteering any information outside the scope of the question when that suited his purposes. When the examination turned to questions concerning the activities with respect to the sale of the truck, Mr. Siegfried did not respond as directly and concisely as he had in his earlier testimony. On the critical issues with respect to the movement of the truck from Siegfried's back yard to the place where the sheriff levied execution and with respect to the activities at the bidding, Siegfried volunteered statements concerning conversations with the attorney. It is in these two areas that the trial court permitted the examination of the former attorney. The defendant argues that *Hemminghaus v. Ferguson,* 358 Mo. 476, 215 S.W.2d 481 (1948), and *State ex rel. Williams v. Vardeman,* 422 S.W.2d 400 (Mo. App.1967), compel the court to the conclusion that any testimony solicited from the client on cross-examination is not voluntary and could not waive the privilege. Such a rule has been criticized:

> Unless there are some circumstances which show that the client was surprised or misled, it seems that the usual rule that the client's failure to claim the privilege when to his knowledge testimony infringing it is offered, would apply here, and that the decisions treating such testimony on cross-examination as being involuntary and not constituting a waiver are hardly supportable.

McCormick's Handbook of the Law of Evidence 195 (E. Cleary ed. 2d ed. 1972) (footnotes omitted). The rationale for the rule espoused in *Hemminghaus* and *Vardeman,* which is that testimony given by a patient on cross-examination is necessarily extorted and cannot constitute a voluntary waiver of the physician-patient privilege, is not applicable to this case. The client's agent who here voluntarily testified, albeit on direct examination by the adverse party, concerning communications between himself and his former attorney, was himself an attorney with forty years' experience. Knight's questions, which elicited the responses constituting a waiver, were general and did not compel an answer that would disclose privileged communications. Both of the areas in which the trial court permitted inquiry of the former attorney were areas in which Siegfried had already related by nonresponsive answers the substance of the attorney's conversations. The trial judge, when confronted with the claim of privilege by Siegfried after Siegfried learned the attorney was to be called as a witness, specifically relied upon these nonresponsive statements as a waiver of the attorney-client privilege. On the record in this case, the action of the trial court was certainly appropriate.

■■■ On his cross-appeal, Knight complains that his claim for $590, that being the difference in amount between Siegfried's judgments against him, should have been submitted on a theory of conversion. Instead, the trial court directed a verdict for Knight on a theory of money had and received. Judgment was entered for Knight in the amount of $590, plus interest from the date the circuit court judgment became final.

The court, in directing the verdict for Knight, found that there was no dispute that M.H. Siegfried owed Knight the money. M.H. Siegfried has not appealed the entry of judgment against it on this count and does not deny that the money was owed to Knight in its reply brief. The only issue, then, is Knight's contention that he should have been allowed to recover under his own theory and thus receive a submission on punitive damages under that count.

*Coleman v. Pioneer Studebaker, Inc.,* 403 S.W.2d 948 (Mo.App.1966); *Dillard v. Payne,* 615 S.W.2d 53 (Mo.1981); and *Breece v. Jett,* 556 S.W.2d 696 (Mo.App. 1977), are cases exemplifying the narrow exception to the general rule that a claim

for money may not be in conversion. To be within this narrow exception, the plaintiff must have delivered funds to the defendant for a specific purpose and the defendant must have diverted them to another and different purpose of the defendant. Knight did not deliver the funds to the defendant; he delivered them to the sheriff who paid them to Siegfried under valid execution. The exception does not apply.

The judgment is affirmed and costs assessed against M.H. Siegfried.

All concur.