**FARMERS & MERCHANTS BANK OF ST. CLAIR, Plaintiff-Respondent,**

v.

**BORG–WARNER ACCEPTANCE CORPORATION, Defendant-Appellant.**

No. 45482.

Missouri Court of Appeals, Eastern District, Division One.

Dec. 6, 1983.

Motion for Rehearing and/or Transfer to Supreme Court Denied Feb. 17, 1984.

Kenneth V. Byrne, Clayton, for plaintiff-respondent.

Richard R. Vouga, Clayton, for defendant-appellant.

SIMON, Presiding Judge.

Borg-Warner Acceptance Corporation (BWAC) appeals from a judgment in a court tried case in the Circuit Court of St. Louis County where it was found to have converted a van, collateral on a loan made by Farmers & Merchants Bank of St. Clair (F–M Bank). The trial court awarded F–M Bank damages of $8228.44 including interest of $1483.81 from the date of conversion to the commencement of the action.

On appeal, BWAC contends the trial court erred in that: (1) F–M Bank did not prove that (a) it had an immediate right to possession; (b) demand for possession or payment had been made on the debtors or that the entire debt was due at the time it demanded possession from BWAC; (2) BWAC had a purchase money security interest in the van which was superior to any interest held by F–M Bank; (3) Meramec Sports Center, Inc. (MSC), BWAC's debtor, did not sell the van to F–M Bank's debtor in the ordinary course of business; and (4) the award of damages in the amount of $6744.63 was not supported by the evidence. We reverse.

On review, we shall affirm the trial court's ruling if it is supported by substantial evidence, is not against the weight of the evidence and the trial court correctly declared and applied the law. *Murphy v. Carron*, 536 S.W.2d 30 (Mo. banc 1976). The cause was submitted to the trial court on stipulated facts, exhibits and some testimony.

MSC is a retail dealer of boats, vans and recreational vehicles. On November 17, 1977, MSC and BWAC entered into a financing agreement whereby BWAC advanced funds to MSC for the purchase of inventory. A security interest was created in BWAC under the agreement in the "inventory and proceeds" of MSC. Two financing statements were filed by BWAC; one was filed on November 22, 1977 with the Recorder in Franklin County, Missouri and the other on November 25, 1977 with the Secretary of State in Jefferson City, Missouri. The financing statements covered "inventory and proceeds." The security agreement did not prohibit the sale of inventory by MSC without prior approval of BWAC. However, BWAC could receive, upon request, the certificate of title or manufacturer's certificate of origin of each item acquired.

As MSC acquired inventory, BWAC advanced the necessary funds. On November 10, 1978, MSC purchased a 1979 Chevrolet van from the manufacturer and BWAC, in accordance with the financing agreement, remitted the $9,873.51 purchase price to the manufacturer on MSC's behalf. On this same date, the manufacturer issued a manufacturer's certificate of origin to MSC.

On December 20, 1978, Harry Wilson, an officer and shareholder of MSC, and his wife, Beverly, requested a loan from F–M Bank for the purchase of the van from MSC. F–M Bank loaned the Wilsons $8,500 to purchase the van and the loan proceeds were paid to MSC. F–M Bank obtained a promissory note from the Wilsons, a security agreement with the van as

collateral and the manufacturer's certificate of origin. The manufacturer's certificate of origin showed an assignment of the van to the Wilsons on December 20, 1978 from MSC. However, the security interest of BWAC was not noted in the space provided on the manufacturer's certificate of origin. The van remained in the possession of MSC, at its place of business.

The evidence indicates that an application for a certificate of ownership was prepared. The date of notarization was February 20, 1978. This date is apparently in error since the purchase date was December 20, 1978. Also, there is no indication as to the date the application was filed with the Director of Revenue. The application contained the following information: The Wilsons as applicant, F–M Bank as first lien holder and MSC as the dealer from whom the van was purchased. Also, a certified check from F–M Bank to the Director of Revenue dated December 26, 1978 in the amount of $13 is in evidence, but the date on which this check was filed with the Director of Revenue does not appear, nor an indication of the date of deposit by the Director of Revenue.

In June, 1979, MSC defaulted on its obligation to BWAC and, pursuant to the financing agreement, BWAC took possession of MSC's inventory including the Wilsons' van which was still on MSC's premises. In August, 1979, the Wilsons defaulted on their obligation to F–M Bank which amounted to $6,744.63 and F–M Bank made demand on BWAC on August 16, 1979 for return of the van, which was refused. On October 10, 1979, F–M Bank filed suit against BWAC. Its petition contains two counts: Count I sounds in conversion seeking damages and Count II seeks recovery of the van or, alternatively, at the election of BWAC, the value of the van. On November 2, 1979, a certificate of title on the van was issued by the Department of Revenue to the Wilsons. The certificate indicated F–M Bank as the lien holder and that the lien was created on December 20, 1978. BWAC sold the van in January, 1981 for $6500.

The trial court found for F–M Bank on the conversion count in the sum of $6,744.63, together with interest from August 19, 1979, the date of the conversion.

We address BWAC's fourth point first, wherein BWAC contends the trial court erred in awarding F–M Bank $6,744.63 as actual damages in that the evidence did not support the amount. We agree.

 The proper measure of damages in suits for conversion is the reasonable market value at the time of the conversion. *Weldon v. Town Properties, Inc.*, 633 S.W.2d 196, 198[2] (Mo.App.1982); *Breece v. Jett*, 556 S.W.2d 696, 709 (Mo.App.1977). The proof of value can relate to a reasonable time within the date of conversion. *Weldon* and *Breece*, supra. Here, the trial court found the conversion occurred in August, 1979 when F–M Bank demanded possession of the van from BWAC and was refused. Three amounts as to damages appear in the record: (1) F–M Bank prayed for $7,232.18 in its petition; (2) $6,744.63 which is the amount due F–M Bank on the loan as of the date of the conversion and which the trial court awarded as damages; and (3) $6,500 which is the amount BWAC received from the sale of the van some 17 months after the date of the conversion. None of the three amounts represent the correct amount of damages in a conversion action. There is no evidence to support the amount prayed for in F–M Bank's petition. The loan amount of $6,744.33 was not shown by the evidence to approximate the value of the van at the time of conversion. The sales price in January, 1981 is not representative of a value of the van within a reasonable time of its conversion. The damage award has no substantial evidentiary support and BWAC's point is well taken.

We shall consider BWAC's first and second points simultaneously. BWAC, in its first point, contends that F–M Bank failed to prove its right to immediate possession of the van, a necessary element in replevin, and failed to present evidence of a demand by F–M Bank on the Wilsons for possession of the van or for payment of the note or that the outstanding loan amount was due

on the date F–M Bank demanded possession from BWAC. Further, in its second point, BWAC contends the trial court erred in that F–M Bank had no valid lien which was superior to BWAC's perfected purchase money security interest.

■ To succeed in an action for conversion, F–M Bank must prove a tortious taking of the van, or a refusal by BWAC to relinquish possession upon a demand by F–M Bank, or a use or taking to use by BWAC indicating a claim of right adverse to F–M Bank's rights. *Houston v. Columbia Federal Savings and Loan Ass'n,* 569 S.W.2d 211, 214 (Mo.App.1978). Further, it is incumbent upon F–M Bank to show that it had possession of the van or the right to possession or ownership with the right to immediate possession of the van. *Brede Decorating, Inc. v. Jefferson Bank and Trust Co.,* 345 S.W.2d 156, 164 (Mo.1961).

■ F–M Bank's right to possession turns upon the respective rights, if any, of F–M Bank and BWAC to the van. Initially, BWAC, upon the authorized sale of the van from MSC to the Wilsons, relinquished its right to possession of the van. BWAC's security agreement with MSC extended to "inventory and proceeds." BWAC's security interest is governed by Article 9 of the Uniform Commercial Code, § 400.9 RSMo 1978, et seq.[1] The motor vehicle liens and encumbrances provisions, § 301.600, et seq., do not apply. Section 301.650.1(3) exempts their application by providing, in pertinent part, that the provisions do not apply to "[a] lien or encumbrances on a motor vehicle or trailer created by a manufacturer or dealer who holds the motor vehicle or trailer for sale." Whereas, § 400.9–109(4) defines inventory as goods "held by a person who holds them for sale or lease or to be furnished under contracts of service or if he has so furnished them, or if they are raw materials, work in process or materials used or consumed in a business." Proceeds is defined in § 400.9–306(1) as "whatever is received when collateral or proceeds is sold, exchanged, collected or otherwise disposed of." Accordingly, upon the sale

of the van, BWAC's security interest transferred to the proceeds received by MSC for the van. Section 400.9–307 and its Uniform Commercial Code Comment 2. The sale was authorized by BWAC's security agreement, thus BWAC's security interest was in the proceeds of the sale. Section 400.9–306(2) and its Uniform Commercial Code Comment 3. BWAC had no interest in the van following its sale. Therefore, BWAC's second point is without merit.

We now consider whether F–M Bank had a right to possession of the van. If so, F–M Bank could maintain an action in conversion if demand was made on BWAC to relinquish possession which was refused. *Sydney v. Coca-Cola Co.,* 569 S.W.2d 11, 13 (Mo.App.1978); *Houston* and *Brede,* supra.

■ F–M Bank's lien, if any, arises out of the provisions of § 301.600, et seq. The Uniform Commercial Code provisions do not apply to liens on motor vehicles created by consumers. *Ford Motor Credit Co. v. Pedersen,* 575 S.W.2d 916, 918 (Mo.App. 1978). See also, § 400.9–302(3)(b) and its accompanying Uniform Commercial Code Comment 8; Section 301.650 provides that the provisions of §§ 301.600 to 301.670 are exclusive and lists three inapplicable situations, none of which apply to F–M Bank.

■ The certificate of title indicates that F–M Bank had a lien on the van which was created on December 20, 1978, before BWAC took possession in August, 1979. The record supports a finding that the Wilsons defaulted on their loan, thereby accelerating the payments and making the total outstanding loan amount due. The record also reveals that F–M Bank made demand on BWAC for possession and was refused. However, the record does not indicate the date of the filing of the application for the certificate of title nor the date of depositing of the $13 check by the Director of Revenue. The certificate of title indicates a perfection date of November 2, 1979. Since the record is insufficient in this mat-

---

1. All further reference shall be to RSMo 1978, as amended.

ter, it can be more thoroughly explored on retrial.

BWAC, in its third point, contends the trial court erred in entering judgment for F–M Bank in that the sale to the Wilsons was not in the ordinary course of business. The evidence supports a finding that the sale was in the ordinary course of business as defined in § 400.1–201(9). The record reveals no substantial evidence of bad faith. The sale did not violate the security agreement between MSC and BWAC.

Reversed and remanded for proceedings consistent with this opinion.

STEPHAN and SATZ, JJ., concur.