**CHEMICAL SALES CO., INC., Appellee,**

v.

**DIAMOND CHEMICAL CO., INC., Appellant.**

**and**

**CHEMICAL SALES CO., INC., Appellant,**

v.

**DIAMOND CHEMICAL CO., INC., Appellee.**

Nos. 84–2006, 84–2075.

United States Court of Appeals, Eighth Circuit.

Submitted March 14, 1985.

Decided June 28, 1985.

John L. Boeger, St. Louis, Mo., for Diamond Chemical.

Mark Pasewark, St. Louis, Mo., for Chemical Sales Co.

Before HEANEY and ARNOLD, Circuit Judges, and HANSON,* Senior District Judge.

HANSON, Senior District Judge.

This is a diversity case under Missouri law in which the plaintiff below, Chemical

* The HONORABLE WILLIAM C. HANSON, Senior United States District Judge for the Northern and Southern Districts of Iowa, sitting by designation.

Sales Co., recovered $100,000 actual damages and $200,000 punitive damages for conversion. We reverse and remand for a new trial.

## FACTS

The basic facts of this case are undisputed.

The plaintiff is a Missouri corporation formerly engaged in the business of distributing cleaning products in the St. Louis area. At all relevant times, plaintiff's sole shareholders were Janet Nick and her brothers Jerry and Donald Holmes. Nick and Jerry Holmes were plaintiff's sole officers and directors, and they managed the plaintiff's business prior to the events that gave rise to this lawsuit.

Defendant is a New Jersey corporation engaged in the business of producing cleaning products. Defendant was plaintiff's primary supplier.

In 1982 plaintiff was in financial difficulty. In order to secure continued supplies of its products, plaintiff entered into an agreement with the defendant whereby defendant was to manage plaintiff's business and receive a security interest in plaintiff's inventory and accounts receivable. In return, defendant agreed to continue selling to plaintiff on open account. The agreement provided that Nick and Jerry Holmes would remain employees of plaintiff. The security interest provided in the agreement was properly perfected.

The course of dealing between the parties under this agreement is disputed, but it is clear that the relationship was not a happy one. In June of 1982 Jerry Holmes resigned as an employee of plaintiff. The next month, Nick and all the other remaining full-time employees resigned. After these resignations defendant terminated plaintiff's business and sold its assets.

After their resignations, either Nick nor Jerry Holmes made any personal contact with defendant. Nick testified that she directed plaintiff's former attorney to contact defendant. However, defendant's president testified that this attorney only demanded what was owed to him by plaintiff. Later, plaintiff's current attorney demanded an accounting from defendant. Apparently defendant made no response to this demand.

## PROCEDURAL HISTORY

Plaintiff asserted claims against defendant for breach of contract and conversion. Defendant counterclaimed for goods sold and delivered. The case was tried to a jury. At the close of plaintiff's evidence, the court granted defendant's motion for a directed verdict against plaintiff on its breach of contract claim. The conversion claim was submitted to the jury, which found for plaintiff in the amount of $100,000 actual damages and $200,000 punitive damages. The jury also found for plaintiff on defendant's counterclaim. Judgment was entered on the jury's verdict. Defendant moved for judgment notwithstanding the verdict or new trial, and the plaintiff moved for new trial on its breach of contract claim. Both motions were denied. Defendant now appeals the judgment for plaintiff on plaintiff's cause of action and defendant's counterclaim. Plaintiff cross-appeals challenging the directed verdict on its breach of contract claim.

## DISCUSSION

*Conversion*

[1] The district court's only instruction on what constitutes conversion was as follows:

You are instructed that conversion of property consists of either:

(1) tortious taking; or

(2) any use or appropriation to the use of the person in possession, indicating a claim of right in opposition to the rights of the owner; or

(3) refusal to give up possession to the owner on demand.

If you find that the defendant converted any of plaintiff's property, then your verdict must be for the plaintiff on plaintiff's claim.

By answer to a special interrogatory, the jury indicated that it relied on the types of conversion numbered 2 and 3 in the above instruction.

■ This instruction is a correct statement of the law as far as it goes, but we find it inadequate to enable a jury to determine whether there was a conversion under the facts of this case. The court's instruction states the three ways conversion can be proved under Missouri law. *See Knight v. M.H. Siegfried Real Estate, Inc.,* 647 S.W.2d 811, 814 (Mo.Ct.App.1982); *Houston v. Columbia Federal Savings & Loan Association,* 569 S.W.2d 211, 214 (Mo.Ct. App.1978). However, the court's instructions did not embody Missouri's general definition of conversion. Missouri defines conversion as "an unauthorized assumption of the right of ownership over personal property of another to the exclusion of [the owner's] right of ownership." *Knight,* 647 S.W.2d at 814. *See also Houston,* 569 S.W.2d at 214. The Missouri courts have emphasized that the essence of conversion lies "not in the acquisition of the property by the wrongdoer, but in the wrongful deprivation of it to the owner." *Price v. Ford Motor Credit Co.,* 530 S.W.2d 249, 255 (Mo.Ct.App.1975). *See also Boyd v. Wimes,* 664 S.W.2d 596, 598 (Mo.Ct.App. 1984); *Nika Corp. v. City of Kansas City, Missouri,* 582 F.Supp. 343, 354 (W.D.Mo. 1983). To constitute conversion an act must so seriously interfere with the rights of the owner that the actor may justly be held responsible for the full value of the property. *Breece v. Jett,* 556 S.W.2d 696, 709 (Mo.Ct.App.1977) (citing Restatement of the Law, Second, Torts, § 222A (1965)). *See also Matter of Kircher,* 9 B.R. 270, 276 (W.D.Mo.1981). The three types or ways of proving conversion embodied in the court's instructions are simply the three ways one can seriously interfere with another's right of ownership in property—by wrongfully taking possession of the property, by making a wrongful use of the property while rightfully in possession, or by wrongfully refusing to give up possession.

Defendant argues that the agreement between the parties that defendant was to manage plaintiff's business precludes any finding of conversion. In particular, defendant argues that it did not wrongfully take possession of plaintiff's property because its possession was authorized by the management agreement. Further, defendant argues that its use of plaintiff's property, including its sale thereof, was on plaintiff's behalf and authorized by the management agreement. If the agreement was in effect at the relevant time, it would preclude a finding of conversion by a wrongful taking of possession. However, plaintiff argues that defendant's use of the property was not on plaintiff's behalf and went beyond what was authorized by the management agreement, thus constituting conversion. We note that even if the defendant's use did go beyond the management agreement, the agreement would still be relevant to whether defendant's interference with plaintiff's rights was sufficiently serious to constitute conversion.

If the district court found the written management agreement to be unambiguous, the court should have determined, as a matter of law, whether the agreement was in effect at the relevant time and whether defendant's use of plaintiff's property was authorized by the agreement. If made in defendant's favor, these determinations would have precluded conversion by wrongful taking or use. However, we find no such determinations in the record. Rather, the district court simply instructed the jury that conversion could consist of a "tortious taking" or "any use or appropriation to the use of the person in possession, indicating a claim of right in opposition to the rights of the owner." Assuming these issues were properly before the jury, we find the court's instructions inadequate to enable the jury to properly understand the issues presented to it. The court's instruction used the term "tortious taking" but did not define "tortious."[1] Further, the

---

1. According to its answer to the special interrogatory, the jury did not rely on the tortious

taking method of conversion. However, we believe the tortious taking instruction may have

court's instructions did not make it clear that in order to constitute conversion any taking or use by defendant must be a *serious* interference with plaintiff's rights of ownership. Finally, the jury was not instructed on the relationship between the management agreement and the issues before it.

As to the third type or method of proving conversion, refusal to give up possession on demand, plaintiff concedes that it did not prove a demand for the property. In its closing argument plaintiff told the jury that it was not relying on conversion by refusal to give up possession on demand. Nonetheless, the jury's answer to the special interrogatory indicates that the jury did rely on refusal to give up possession on demand. This confirms that the jury simply did not understand the issues before it.

█ Defendant argues that plaintiff's inventory and receivables, in which defendant had a security interest, were not subject to conversion because defendant had the right under its security interest to take possession and dispose of its collateral. Plaintiff argues that the collateral was converted because defendant failed to give notice of the disposition of the collateral, made a commercially unreasonable disposition, and refused to account to plaintiff. Further, plaintiff argues that defendant failed to prove that plaintiff was in default when defendant disposed of the collateral. It is clear that a creditor's improper treatment of collateral can amount to a conversion.[2] See generally 1A P. Coogan, W. Hogan, D. Vagts, and J. McDonnell, Secured Transactions under the Uniform Commercial Code (Bender's Uniform Commercial Code Service) § 8.08[2][a] (1984). For example, Missouri courts have found conversion of collateral where a creditor wrongfully refused to redeem collateral,

*Owens v. Automobile Recovery Bureau, Inc.,* 544 S.W.2d 26 (Mo.Ct.App.1976), where a debtor was not in default and the creditor gave no notice of the sale of collateral, *Allen v. Bagley,* 234 Mo.App. 891, 133 S.W.2d 1027 (1939), and where a creditor took possession of collateral but refused to apply it to the debt, *Simpson v. Bantley Realty Co.,* 142 Mo.App. 490, 126 S.W. 999 (1910). The ultimate issue is whether a creditor's treatment of collateral is an unauthorized assumption of the right of ownership which so seriously interferes with the debtor's ownership rights that the creditor may justly be held responsible for the full value of the collateral. The evidence below was sufficient to present a jury question on this issue. However, the court's instructions were inadequate to enable the jury to determine this issue. The instruction did not adequately discuss the nature of conversion, defendant's rights and duties under the security agreement, or the relationship between defendant's security interest and the conversion issue.

█ Defendant also argues that the evidence shows abandonment of the property by plaintiff, which is a complete defense to conversion, *Knight,* 647 S.W.2d at 815. The district court did not instruct the jury on abandonment. Under Missouri law, abandonment requires intent to abandon and an external act by which that intent is carried into effect. *Linscomb v. Goodyear Tire & Rubber Co.,* 199 F.2d 431, 435–36 (8th Cir.1952); *Wirth v. Heavey,* 508 S.W.2d 263, 267 (Mo.Ct.App.1974). Intent to abandon can be inferred only from strong and convincing evidence. *Linscomb,* 199 F.2d at 435; *Knight,* 647 S.W.2d at 815; *Wirth,* 508 S.W.2d at 267. Under this standard, we agree with the district court's apparent conclusion that the evidence in this case was not sufficient to

---

confused the jury, and such confusion is inherently prejudicial.

**2.** Though improper treatment of collateral can amount to conversion, a creditor who converts collateral is entitled to a credit against the debtor's recovery for the debt secured by the collateral. *See Russell v. Empire Storage and Ice Co.,*

332 Mo. 707, 59 S.W.2d 1061, 1066–68 (1933); *Kegan v. Park Bank,* 320 Mo. 623, 8 S.W.2d 858, 872 (1927), *modified,* 320 Mo. 623, 15 S.W.2d 333 (1927); *Bruce v. Crysler,* 217 S.W. 563 (Mo. Ct.App.1920); 18 Am.Jr.2d Conversion § 108 (1965). This is relevant to defendant's counterclaim.

support a finding of abandonment. However, the evidence was sufficient to support a finding of implied consent to or ratification of defendant's conduct, which is also a defense to conversion. *Graves v. Stewart,* 642 S.W.2d 649 (Mo.1982) (en banc); *Kegan v. Park Bank,* 320 Mo. 623, 8 S.W.2d 858, 871 (1927), *modified,* 320 Mo. 623, 15 S.W.2d 333 (1927); *Maples v. United Savings and Loan Association,* 686 S.W.2d 525 (Mo.Ct.App.1985). The defense of implied consent or ratification follows from the definition of conversion as an *"unauthorized* assumption of the right of ownership." (Emphasis added.) *Maples,* 686 S.W.2d 525. However, the jury was not instructed that conversion must be an unauthorized assumption of the right of ownership. The defense could be inferred from the references in the court's instructions to *"tortious* taking," "a claim of right *in opposition to* the rights of the owner," and "refusal to give up possession to the owner *on demand."* (Emphasis added.) However, we do not believe the jury could be expected to infer the defense of implied consent or ratification from these references in the court's instructions. Rather, the jury should have been explicitly instructed on the defense of implied consent or ratification.

On the whole, we believe that the court's instructions on conversion simply did not enable the jury to understand the issue before it. The court's instructions might have been sufficient in an uncomplicated conversion case, but something more is demanded by the complexities introduced into this case by the management agreement, defendant's security interest, and the implied consent or ratification issue. Therefore, we must reverse and remand for a new trial.[3]

### Breach of Contract

■ The court granted a directed verdict for defendant on plaintiff's breach of contract claim. Plaintiff's breach of contract claim was based on the management agree-

ment between the parties. The court's rationale for a directed verdict on this claim does not appear on the record. Without addressing the merits, we believe the plaintiff's breach of contract claim is so closely related to its conversion claim that retrial of the conversion claim calls for retrial of the breach of contract claim.

### Counterclaim

Defendant asserted a counterclaim against plaintiff for goods sold and delivered. The court instructed the jury on the elements of a claim on open account and added that the verdict must be for the plaintiff if defendant failed to give plaintiff notice of the sale of plaintiff's inventory, in which defendant had a security interest. The jury found for plaintiff on defendant's counterclaim.

■ Defendant argues that any failure to give notice of the sale of the collateral should not preclude its counterclaim. It is settled law in Missouri that a creditor's failure to give notice of the sale of collateral precludes a deficiency judgment. *Clune Equipment Leasing Corp. v. Spangler,* 615 S.W.2d 106, 108 (Mo.Ct.App.1981); *Gateway Aviation, Inc. v. Cessna Aircraft Co.,* 577 S.W.2d 860, 863 (Mo.Ct.App.1978); *Executive Financial Services v. Garrison,* 535 F.Supp. 263, 266 (W.D.Mo.1982), *aff'd,* 722 F.2d 417 (8th Cir.1983). To the extent it seeks recovery in excess of the value of the collateral allegedly converted by defendant, defendant's counterclaim amounts to a claim for a deficiency judgment. Therefore, any failure by defendant to give notice of the sale of collateral should preclude any recovery on defendant's counterclaim beyond the value of the collateral. However, defendant is entitled to recover on his counterclaim for the debt secured by the collateral to the extent of plaintiff's recovery on the value of the collateral for its conversion. *See Russell v. Empire Storage and Ice Co.,* 332 Mo. 707, 59 S.W.2d 1061, 1066–68 (1933); *Kegan v.*

---

**3.** We note that in the trial below the evidence was insufficient to support any punitive damages against defendant. If no more is submitted on retrial, punitive damages should not be submitted to the jury.

**370**

*Park Bank,* 320 Mo. 623, 8 S.W.2d 858, 872 (1927), *modified,* 320 Mo. 623, 15 S.W.2d 333 (1927); *Bruce v. Crysler,* 217 S.W. 563 (Mo.Ct.App.1920); 18 Am.Jr.2d Conversion § 108 (1965). Therefore, the court erred in precluding any recovery on defendant's counterclaim if defendant failed to give notice of the sale of the collateral.

## CONCLUSION

The judgment on plaintiff's cause of action and defendant's counterclaim is reversed, and the case is remanded for a new trial.