Kenneth Gary LIETZ, a Minor, by F. Ken Lietz, Next Friend, Appellant,

v.

SNYDER MANUFACTURING COMPANY, a Corporation, and Central Hardware Company, a Corporation, Respondents.

No. 55438.

Supreme Court of Missouri, Division No. 1.

Jan. 10, 1972.

**106**

Sommers & Montrey, James P. Holloran, St. Louis, for appellant.

R. E. Keaney, Moser, Marsalek, Carpenter, Cleary, Jaeckel, Keaney & Brown, St. Louis, for respondent Snyder Mfg. Co.

Louis W. Riethmann, Thomas E. Fitzgibbons, St. Louis, for respondent Central Hardware Co.

HOUSER, Commissioner.

Kenneth Gary Lietz, pro ami, sued the manufacturer, Snyder Manufacturing Company, and the retailer, Central Hardware Company, for $65,000 damages for personal injuries sustained while using a gym bar. Following a verdict for both defendants plaintiff appealed, raising three procedural points.

The petition alleged that defendants impliedly warranted the gym bar to be fit and safe for the purposes for which it was intended when used in the manner directed and that he relied upon the implied warranty; that the gym bar was "in a defective condition and unreasonably dangerous to the users thereof by reason of the fact that said exercise bar, or gym bar, was inadequately and insufficiently constructed and designed for use in the manner directed in the instructions and directions contained * * * in its package and when used in the manner and for the purposes for which it was intended." Defendants pleaded contributory negligence.

Defendant Snyder admitted that it manufactured and sold to defendant Central the gym bar purchased by plaintiff's father from Central. Father and son put up the gym bar in a doorway in plaintiff's bedroom one morning. Plaintiff's father installed the bar parallel to the floor. After tightening the gym bar into the door frame the father tried it, found that it slipped a little out of the door frame, tightened it again and when it held him and his son he left it as it was until the time of the accident that evening. Plaintiff's father warned plaintiff to keep the bar tight. Plaintiff used the gym bar on the morning it was installed and again some eight or nine hours later in the evening. While using the gym bar that evening, without having further tightened it, plaintiff pulled his chin up even with the bar and as he attempted to lift his legs parallel to the floor the bar collapsed and plaintiff fell to the floor on his tailbone, causing him to sustain substantial injuries. The bar itself did not break or come apart. Either one or both of the two ends slipped and came out of position from the door jamb.

Fred Deppe of St. Louis Testing Laboratory (plaintiff's expert witness) ran tests on the gym bar to determine its holding characteristics after being placed in a door frame in accordance with directions for its use. He testified that the bar was tightened to extreme resistance by a man who weighed 180 pounds; that with the load hanging six inches from either end of the bar the immediate load to slip was 255 pounds; that after thirty minutes the load from either end of the bar was 265 pounds (an increase of 10 pounds); that after four hours, without any further adjustment, it decreased to 210 pounds; that

with the bar horizontal the most important single factor in the bar's load-carrying capacity is the pressure with which it is put up. Mr. Deppe had the bar apart, looking for defects, but neither saw nor recorded any mechanical defect in the bar itself.

Error is assigned in refusing to admit plaintiff's proffered evidence that if the gym bar was not installed in a perfectly horizontal position it would have a greater tendency to slip and fall. Plaintiff's testimony and that of his father was that the gym bar was placed in position according to instructions, i. e., horizontal. In making his offer of proof plaintiff's attorney stated that " * * * the evidence will show that the bar was installed in exactly the same fashion as directed on the pamphlet." Plaintiff's Exhibits 3 and 4, photographs of the bar placed in the doorway at plaintiff's home, show that the bar was installed in a horizontal position, parallel to the floor, in accordance with instructions. Appellant would nevertheless have the Court take judicial notice of the fact that an ordinary person installing such a bar cannot get it perfectly horizontal without leveling or precision measuring devices, which were not used.

■ The tests made by Mr. Deppe, as to which he was permitted to testify, were experimental tests conducted under circumstances substantially similar in essential particulars to the conditions prevailing at the time of the occurrence in question. That evidence met the approved standard of sufficiency of the probative value of testimony relating to experiments. Lynch v. Missouri-Kansas-Texas R. Co., 333 Mo. 89, 61 S.W.2d 918; James v. Bailey Reynolds Chandelier Co., 325 Mo. 1054, 30 S.W.2d 118; Wilcox v. St. Louis-Southwestern R. Co., Mo.Sup., 418 S.W.2d 15.

■ The evidence excluded related to tests conducted under circumstances substantially dissimilar to the conditions existing at the time plaintiff fell, i. e., with the gym bar at various angles and positions, none of which was horizontal. Whether evidence of tests made should be admitted is a matter peculiarly within the discretion of the trial judge, Wilcox, supra; Calvert v. Super Propane Corp., Mo.Sup., 400 S.W.2d 133. The trial judge's discretion in that regard should not be interfered with on appeal unless it is manifest that he abused his discretion. Lynch v. Railway Mail Ass'n, Mo.App., 375 S.W.2d 216. We find no abuse of discretion in the refusal of the trial judge to admit evidence of tests made under conditions admittedly dissimilar and substantially different from the conditions admittedly prevailing at the time the plaintiff fell. State v. Beal, Mo.Sup., 474 S.W.2d 830 (decided December 13, 1971).

Next, plaintiff claims error in not allowing his counsel to argue and explain to the jury the law of strict liability as it applied to defendants. Examination of the record does not bear out this claim. It is true that at the outset of plaintiff's closing argument an objection was sustained after his first reference to the doctrine and before counsel completed the sentence, viz.; "I told you to begin with this is what is known as a product liability case and under the laws of the State of Missouri one who manufactures or sells * * * a product for the sale and ultimate use by the public, generally is strictly liable, strictly liable * * *" (objection interrupting). This was stricken, on what theory we are not advised. Counsel then indicated his desire to argue strict liability and offered to do so. The court answered "Yes, you may, but don't argue that. You may argue the evidence and the facts." Continuing, counsel was permitted to argue as follows:

"Let me put it this way: Under the evidence adduced here, and under the instructions His Honor has given you, it makes no difference whether or not Central Hardware Company or Snyder Manufacturing Company exercised any degree of care or was negligent. It's simply a case, was that the gym bar—who was it marketed and sold by, Snyder Company and by Central

Hardware Company, in a defective condition, and to the ultimate user thereof.

"Now, that is the only issue you have to really decide, because the other element of the instructions, first of all, did Snyder manufacture and sell gym bars. That is admitted.

"Did Central Hardware sell gym bars. That is admitted.

"Second, did the gym bar as manufactured and sold, was it defective and therefore dangerous when put to a use reasonably anticipated.

"This one I will come back to and talk about in a minute.

"Third, when the plaintiff used the gym bar it was in substantially the same condition as when manufactured and sold by the defendant, Central Hardware Company. There is no doubt this is the gym bar as in the same condition it was used this one day, and that is the evidence, and it is not disputed.

"Fourth, when the plaintiff used the gym bar in a manner reasonably anticipated and was damaged as a direct result of the gym bar being defective, we use the word damaged rather than injured, because when you're injured you're damaged, and there is no doubt he was damaged, and then there are the words 'reasonably anticipated manner' and there is going to be a lot of talk from the defendants about whether or not this was defective, and I am not going to argue too much about that. There is nothing wrong about this, there is nothing about this that was not exactly as manufactured. I understand it to be a bar that screws to another bar, and that there are cushions on it and so forth, but don't be fooled by a play on words.

*    *    *    *    *    *

"This is the defect, that they failed to notify in advance that it's only supposed to be used for thirty minutes—if it's only supposed to be used thirty minutes I don't know, but if it's only supposed to be used thirty minutes and they don't warn you about it then it's a defect, the commodity isn't right. That is a defect.

*    *    *    *    *    *

"They have a right to their claim to put it on the market. My objection is that they make something that has an unknown danger, and not tell the public about it. That is not the law when you do that. You are putting a commodity on, and they don't tell you what really will happen if you leave this thing up tightened as best you can tighten it for four hours.

*    *    *    *    *    *

"If a father has a job where he has to work eight hours a day, and got the gym bar and brought it home for the people in the family as shown in the picture, the mother and the son, used the gym bar during the day, after the father had tightened it with his best strength, don't you think they would be in danger of having the same thing happen to them? These are the people the Snyder Manufacturing Company wants to use this bar in the manner shown, with the little boy swinging his leg out, so if he fell he would land right on his back. Now, this is what is Snyder Manufacturing Company's advice, and it doesn't say don't let your family use it while your gone in that picture. That stays out.

"You mean to say that that is not a defective commodity within the meaning of the law? I submit to you that we have more than proved the defectiveness of the commodity *    *    *.

*    *    *    *    *    *

"Now, they said that they don't reasonably anticipate this. I don't know what they anticipate a person is going to do when they show pictures of a young child doing exactly what Kenneth Leitz was doing at the time and for them to say that they didn't rely on them for anything, he relied on the integrity of the Central Hardware Company, and the integrity of Snyder Manufacturing Company to put out a product *    *    *.

"We have a right to rely on people to be at least willing to sell us safe products."

■ The foregoing illustrates that counsel was given reasonable latitude to argue the law and the facts relating to the doctrine of strict liability; to differentiate between strict liability and liability for negligence and to argue every element of Instructions Nos. 2 and 4, which submitted the case under the theory of strict liability. The initial restriction on counsel's latitude at the outset of his argument was relaxed by subsequent rulings of the court. There was no abuse but rather a reasonable exercise of the discretion of the court in permitting or restricting closing argument on behalf of plaintiff.

Finally, plaintiff assigns error in the giving of Instruction No. 5, offered by defendant Central Hardware to converse verdict-directing Instruction No. 4.

Instruction No. 4 follows:

"Your verdict must be for the plaintiff against defendant, Central Hardware Company, if you believe:

"First, defendant, Central Hardware Company, sold the Pro-Am Gym Bar; and

"Second, the gym bar, as sold by the defendant, was defective and therefore dangerous when put to use reasonably anticipated, and

"Third, when plaintiff used the gym bar it was in substantially the same condition as when sold by the defendant, and

"Fourth, plaintiff used the gym bar in a manner reasonably anticipated and was damaged as a direct result of the gym bar being defective."

Instruction No. 5 follows:

"Your verdict must be for defendant Central Hardware Company unless you believe that the gym bar, as sold by defendant Central Hardware Company, was defective, and that the plaintiff used the gym bar in a manner reasonably anticipated."

Plaintiff argues that No. 5 was not in substantially the same language as No. 4; that No. 5 allowed the jury to find for Central Hardware if the gym bar was not "defective" notwithstanding the jury at the same time may have believed that it was defective and thereby dangerous when put to a use reasonably anticipated; that No. 5 was confusing, misleading and misdirected the jury because it used the word "defective" whereas in paragraph two of No. 4 the language used was "defective and therefore dangerous when put to use reasonably anticipated"; that the latter phrase should have followed the word "defective"; that the jury should not have been allowed to interpret the word "defective" but should have been instructed in the same language used in No. 4; that under No. 5 the jury, "believing the gym bar was not defective, i. e., no defect from a standpoint of a mechanical nature, and made in the manner intended, could have and may have returned a verdict for the defendant notwithstanding the jury at the same time may have believed that the gym bar was defective and therefore dangerous when the plaintiff put it to a use reasonably anticipated by the defendant."

■ Instruction No. 5 was not erroneous. It properly conversed a separate element of plaintiff's case under the doctrine of strict liability, namely, that the product was defective. There is a distinction between (1) the defective condition of a product and (2) the dangerous character of the product when put to a use reasonably anticipated. These are separate and distinct elements of a plaintiff's case under this doctrine. Anno. Products Liability—Strict Liability, §§ 5 and 6, 13 A.L.R.3d 1057, beg. p. 1075. In conversing a verdict-directing instruction a party is not required to converse the entire instruction or any particular part of it. A defendant may submit the converse of *any one* of the elements essential to plaintiff's recovery. See MAI 33.01, Converse Instructions—General Comment, citing McCarty v. Milgram Food Stores, Inc., Mo.Sup., 252 S. W.2d 343. And see Terrell v. Missouri-

Kansas-Texas R. Co., Mo.Sup., 327 S.W.2d 230, 237. One essential element of strict liability in this case was that the gym bar was defective. Instruction No. 5 exactly conversed that essential element. While (1) and (2) above are connected and stated together in the second paragraph of Instruction No. 4 [following MAI No. 25.04] (1) above may be conversed without conversing both (1) and (2); either may be conversed separately as independent elements of plaintiff's case.

If there was error in No. 5 in not following the word "defective" with the phrase "and therefore dangerous when put to use reasonably anticipated" it was an error common to plaintiff's Instructions Nos. 2 and 4, as well as defendant Central Hardware's No. 5, because the word "defective" appearing in the fourth paragraph of Nos. 2 and 4 was not followed by the phrase. In them the word "defective" stands by itself without definition, limitation or qualification. It is only reasonable to conclude, and we cannot say that the jury was otherwise advised than, that the word "defective" was used in paragraphs two and four in the same independent and distinct sense. But there was no error. Instead, in submitting the word "defective" alone and by itself in No. 5 Central Hardware assumed a greater burden than that required because it allowed a finding for plaintiff if the gym bar was defective generally or in any respect and used in a manner reasonably anticipated without also requiring a finding of its dangerous character when put to such use. The same thought was expressed in Terrell v. Missouri-Kansas-Texas R. Co., supra, a FELA case, in which plaintiff submitted on several theories of negligence. At defendant's instance an instruction was given directing a verdict for defendant if the jury believed that defendant was not "negligent." In upholding the instruction as a proper converse it was observed that "Perhaps it could be said that defendant, by requiring the jury to find that it was not 'negligent,' instead that it was not negligent in any of the respects submitted in other instructions, assumed a greater burden than necessary." 327 S.W.2d, l. c. 237. Terrell, decided prior to MAI, in effect was confirmed in Birmingham v. Smith, Mo.Sup., 420 S.W. 2d 514. There plaintiff gave an instruction under MAI 29.02(2) submitting "Second, defendant permitted his vehicle to come into contact with the bridge rail," and "Third, defendant was thereby negligent." Defendant's converse, "Your verdict must be for defendant if you do not believe that defendant was negligent," was upheld as a converse of paragraph Third to which defendant was entitled. Likewise in the case before us the converse instruction directing a verdict for defendant Central Hardware unless the jury believed the gym bar was "defective" and that plaintiff used it in a manner reasonably anticipated was properly given.

Cases cited by plaintiff in situations where the converse instruction did not use substantially the same language as the verdict-director are not in point, since No. 5 uses the same identical language in conversing two essential elements of plaintiff's case. Cases in which the word "negligence" (omitted from the verdict-director) was added to the converse are not persuasive in this situation. Austin v. Western Auto Supply Co., Mo.Sup., 421 S.W.2d 203, is not apposite for in that case defendant, in an attempt to converse causation, injected a new and false issue into the case, thereby misdirecting the jury. In Reichman v. Camden Fire Ins. Ass'n, Mo.App., 427 S.W.2d 729, an instruction which did not converse any one of three conditions precedent set forth in plaintiff's instruction was held not to be a converse instruction.

Judgment affirmed as to both defendants.

WELBORN and HIGGINS, CC., concur.

PER CURIAM:

The foregoing opinion by HOUSER, C., is adopted as the opinion of the court.

All of the Judges concur.