Joseph STEVINSON, et al., Respondents,

v.

DEFFENBAUGH INDUSTRIES, INC., Appellant.

No. WD 47107.

Missouri Court of Appeals, Western District.

Dec. 7, 1993.

Motion for Rehearing and/or Transfer to Supreme Court Denied Feb. 1, 1994.

Application to Transfer Denied March 22, 1994.

Richard Daly Rhyne, Kansas City, for appellant.

John Edmund Turner, Kansas City, for respondents.

Before HANNA, P.J., and
LOWENSTEIN and FENNER, JJ.

FENNER, Judge.

Appellant, Deffenbaugh Industries, Inc. (Deffenbaugh), appeals from adverse judgments, after trial by jury, in favor of respondents. Respondents brought the action below as plaintiffs in regard to the operation by Deffenbaugh of the Woods Chapel Landfill.

Respondent, Joseph Stevinson (Stevinson), owns a tract of land, where his home is located, adjacent to and north of the Woods Chapel Landfill.[1] Respondent, Stevinson Auto and Electrical School Company, Inc. (Stevinson Auto), is a corporation which formerly operated a technical school in downtown Kansas City, Missouri. Currently, the only business of Stevinson Auto is ownership of unimproved land which abuts the western most border of the Woods Chapel Landfill.

---

1. Joseph Stevinson's wife, Virginia, was a party to this action until her death in 1991.

Respondents Ross and Carol Miller own a tract of land, where their home is located, adjacent to and mostly south of the Woods Chapel Landfill.

Deffenbaugh purchased the Woods Chapel Landfill on or about June 14, 1984. Prior to the purchase by Deffenbaugh, the rights to operate the landfill had been held by various entities from 1972 to 1984. Respondents filed the underlying action against Deffenbaugh on June 13, 1989 under theories of negligence and nuisance. Respondents' action was ultimately submitted on their allegations of nuisance representing that they were damaged by Deffenbaugh's unreasonable operation of the Woods Chapel Landfill. The respondents presented evidence to show that their right to enjoy and use their property peacefully was substantially impaired by Deffenbaugh's unreasonable operation of the landfill which created noise, dust, litter, odor, and general pollution of their property.

## I.

In its first point on appeal, Deffenbaugh alleges that the trial court erred by allowing evidence and instructing the jury on the reduction in fair market value of respondents' properties, and refusing Deffenbaugh's instructions which would have withdrawn evidence of reduction in fair market value. In this regard, Deffenbaugh argues that the case was tried and submitted on a theory of temporary nuisance and that reduction in fair market value is not the proper measure of damages for a temporary nuisance.

Nuisance is the unreasonable, unusual, or unnatural use of one's property so that it substantially impairs the right of another to peacefully enjoy his property. *Frank v. Environmental Sanitation Management, Inc.*, 687 S.W.2d 876, 880 (Mo. banc 1985). The law of nuisance recognizes two conflicting rights: 1) property owners have a right to control their land and use it to benefit their best interests; and, 2) the public and neighboring land owners have a right to prevent unreasonable use that substantially impairs the peaceful use and enjoyment of other land. *Id.* The unreasonable use element of nuisance balances the rights of adjoining property owners. *Id.*

A nuisance is temporary if it may be abated, and it is permanent if abatement is impracticable or impossible. *Id.* at 883. Damages for a permanent nuisance are measured by the difference in the land's market value immediately before and after injury. *Id.* at 883. Damages for a temporary nuisance are the decrease in rental or useable value of the property as well as any special costs. *Id.* at 883. The character of the source of injury often distinguishes temporary and permanent nuisances. *Id.* at 883, (citing *Rebel v. Big Tarkio Drainage Dist.*, 602 S.W.2d 787 (Mo.App.1980)).[2]

In *Frank*, the plaintiff landowners sued Environmental Sanitation Management, Inc. (ESM), owner of a landfill, for damages arising out of ESM's maintenance of a permanent nuisance. *Id.* at 878. The plaintiffs alleged that ESM allowed contaminated water to run across their property. The contaminated water, together with the residue it carried, was referred to as leachate.[3] *Id.* at 879.

ESM argued that the jury should have been instructed on damages for a temporary rather than a permanent nuisance. However, the court noted that the evidence showed that expensive and sophisticated leachate control plans failed to stop the contamination and that this justified permanent damages. *Id.* at 883. The court further held that a stigma had attached to the land from repeated leachate outbreaks and that the stigma permanently devalued the plaintiff's property, thus justifying an award of permanent damages. *Id.* at 883.

**2.** In *Frank*, the court disapproved of *Rebel* to the extent that *Rebel* held that a claim of nuisance could not be maintained without proof of intentional, reckless or abnormally dangerous conduct by the defendant. Citing *White v. Smith*, 440 S.W.2d 497 (Mo.App.1969), *Frank* held that the defendant's negligence, intention, design, or mo-

tive are immaterial to his liability for nuisance. *Frank*, 687 S.W.2d at 880 n. 3.

**3.** Leachate was described as polluted, discolored, foul-smelling scum.

■ When a nuisance is permanent, full damages for permanent injury must be assessed in one action. *Stewart v. City of Springfield*, 350 Mo. 234, 165 S.W.2d 626, 631 (Mo. banc 1942). When a nuisance is "temporary, continuing or abatable," an injured party can bring a subsequent action for injuries sustained by the continuation of a temporary nuisance. *Spain v. City of Cape Girardeau*, 484 S.W.2d 498, 503 (Mo.App.1972).

As recognized in *Spain*, whether a particular nuisance is permanent or temporary is often a confusing area of the law. "The terms are, in reality, often only short-hand conclusions to determine the outcome of a particular case or the legal effects of certain defenses, such as the statute of limitations." *Id.* at 503–04.

■ For a permanent nuisance, the period of limitations runs immediately upon creation of the permanent nuisance and bars all claims of damage, present and future, after lapse of the statutory period. *Rebel v. Big Tarkio Drainage Dist.*, 602 S.W.2d 787, 792 (Mo.App.1980). The effect of an adjudication of permanent nuisance is to declare to the tort-feasor an unabated right to continue the trespass. *Id.* Thus, a permanent nuisance no less than an exercise of eminent domain destroys the estate or beneficial use in the land and entitles the owner to the same measure of compensation: the depreciation in the market value of the land damaged. *Id.* (citations omitted).

■ The period of limitations as to a temporary nuisance runs anew from the accrual of injury from every successive invasion of interest. *Id.* The recovery is for the damage actually sustained to the commencement of suit, but not for prospective injury. *Id.* (citation omitted). The theory is that a temporary nuisance may be abated at any time by a reasonable effort or by an order of the court, but if not, then the injured party can bring a successive action for the continuance of damage. *Id.* As the *Rebel* court stated:

The right to a successive action for the continuance of a nuisance rests on the principle that the tort-feasor "is under legal obligation to remove, change, or repair the structure or thing complained of, and

thereby terminate the injury to his neighbor; and, failing so to do, each day's continuance of the nuisance is a repetition of the original wrong, and a new action will lie therefor." The law assumes that a temporary nuisance will abate—if not by voluntary act of the tort-feasor then by judicial agency—and so confines recovery to injury already accrued. Thus, the measure of damages from a temporary nuisance is the depreciation of the rental or use value of the land during continuance of injury, as well as any special costs.

*Id.* at 792–93 (citation omitted).

In the case at bar, respondents pleaded and submitted their case on the theory of temporary nuisance. However, relying chiefly on *Frank*, 687 S.W.2d 876 (Mo. banc 1985), respondents argue that they were entitled to permanent damages. To support their claim for permanent damages, evidence was offered by respondents, and received, to establish that because of the unreasonable operation of the Woods Chapel Landfill a stigma had attached to respondents' properties that rendered the properties permanently devalued. Deffenbaugh argues that it was error for the trial court to admit evidence of permanent damages and instruct the jury accordingly.

The difference between *Frank* and the case at bar is that *Frank* was an action for damages for what was alleged to be a permanent nuisance. As acknowledged by respondents, the case at bar was an action for damages for what was alleged and tried as a temporary nuisance.

■ Different statutes of limitations, defenses and damages being applicable to the different theories of recovery, a plaintiff is not entitled to recover permanent damages when only a temporary nuisance is alleged and the case tried on a theory of temporary nuisance. *Frank* does not hold otherwise. *Frank* merely stands for the proposition that in an action on a permanent nuisance, evidence of devaluation of property as a result of a stigma attaching is substantial evidence for an award of permanent damages. *Frank* does not hold that permanent damages are recoverable in an action presented solely on a theory of temporary nuisance.

In an action for damages in what was pleaded and presented in the case at bar as a temporary nuisance, it was error for the trial court to allow evidence and instruct the jury on reduction in fair market value. Reduction in fair market value constitutes permanent damages which are not recoverable for a temporary nuisance. Accordingly, this cause is remanded for new trial. Nonetheless, this does not end our review in that appellants raise other issues that we deem appropriate to address as likely to recur on retrial.[4]

## II.

In its third point, Deffenbaugh argues that the trial court erred by admitting evidence of events occurring prior to the dates of two previous actions between the parties. Deffenbaugh argues that said events were barred by the failure of respondents to assert compulsory counterclaims and that the trial court erred by refusing Deffenbaugh's tendered instruction which would have withdrawn any evidence of loss having occurred prior to the previous actions.[5]

Rule 55.32(a) relates to compulsory counterclaims and provides, in relevant part, as follows:

A pleading shall state as a counterclaim any claim which at the time of serving the pleading the pleader has against any opposing party, if it arises out of the transaction or occurrence that is the subject matter of the opposing party's claim and does not require for its adjudication the presence of third parties of whom the court cannot acquire jurisdiction.

■ The function of Rule 55.32(a) is "to serve as 'a means of bringing all logically related claims into a single litigation, through the penalty of precluding the later assertion of omitted claims.'" *State ex rel. J.E. Dunn, Jr. & Associates, Inc. v. Schoenlaub,* 668 S.W.2d 72, 75 (Mo. banc 1984) (quoting *Cantrell v. City of Caruthersville,* 359 Mo. 282, 221 S.W.2d 471, 474 (1949)). Thus, a claim which relates to the same operative facts as an opponent's claims, and which is logically related to that claim, must be asserted as a counterclaim to the opponent's claim, or not at all. *Id.*

■ In applying Rule 55.32(a), it is not necessary that the opposing claims be conditional upon each other, nor is the rule limited to those claims that are of the same nature or seek the same relief. *Id.* Within the meaning of the rule, the term "subject matter" describes the "physical facts, the things real or personal, the money, lands, chattels, and the like, in relation to which the suit is prosecuted." *Id.,* (quoting *Cantrell,* 221 S.W.2d at 475).

---

4. Our ruling on Deffenbaugh's first point is dispositive of its second, fourth, sixth and seventh points.

 In its second point, Deffenbaugh argues that the trial court erred in refusing its statute of limitations defense to the submission of permanent damages. Since we have determined that the submission of permanent damages was in error, it is not necessary to address Deffenbaugh's second point.

 In its fourth point, Deffenbaugh argues that the trial court erred by admitting evidence of the stigma attached to the properties of the respondents from the landfill operation because there was lack of proper foundation for the admission of this evidence. Since we have already determined that the trial court erred by submitting this evidence when the cause was pleaded and submitted as a temporary nuisance, no further analysis of the evidence is necessary.

 In its sixth point, Deffenbaugh argues that the trial court erred by admitting testimony concerning the effects of the operation of the Woods Chapel Landfill upon properties owned by persons not party to the case at bar. The essence of Deffenbaugh's complaint is that neighboring property owners were allowed to testify that they have experienced a reduction in their property values as a result of the operation of the landfill. Since it has been determined in the first point herein that such testimony was not admissible, this point needs no further discussion.

 In its seventh point, Deffenbaugh argues that the trial court erred in submitting the issue of punitive damages because the evidence failed to show that Deffenbaugh was knowingly or willfully maintaining a nuisance. Since this point only questions the sufficiency of the evidence and the cause is being remanded for new trial, we will not review the sufficiency of the evidence in that the evidence is subject to change on retrial.

5. Deffenbaugh also argues in its third point that the prohibition against splitting a cause of action applies. However, since we find that the nuisance action was a compulsory counterclaim, it is not necessary for us to discuss the splitting of a cause of action.

■ For purposes of this rule, the term "transaction" is to be applied in its broadest sense. *Id.* The term "is one of broad and flexible meaning and is intended to include all the facts and circumstances constituting the foundation of a claim and shall be applied so as to bring all logically related claims into a single litigation." *Jewish Hospital of St. Louis v. Gaertner*, 655 S.W.2d 638, 641 (Mo. App.1983). Significantly, when the facts which would support a defense to the original claim would also support a counterclaim, the two arise from the same transaction. *Id.* at 640; *Cantrell v. City of Caruthersville*, 359 Mo. 282, 221 S.W.2d 471, 477 (1949).

In arguing that the trial court erred by admitting evidence of events occurring prior to the dates of two previous actions, the two previous actions to which Deffenbaugh refers were 1) a Petition for Review and for Declaratory Judgment and 2) a defamation action.

## PETITION FOR REVIEW

■ In its Petition for Review and Declaratory Judgment, Deffenbaugh as plaintiff brought suit against the City Council and City of Independence, Missouri seeking to have the decision of the City Council denying a special use permit to Deffenbaugh for operation of the Woods Chapel Landfill reversed and the denial declared invalid and unlawful. Respondents in the case at bar were allowed to intervene in the Petition for Review and for Declaratory Judgment.

Initially, the Petition for Review and Declaratory Judgment related to the legality of the action of the City Council in relation to Deffenbaugh's request for a special use permit for operation of the Woods Chapel Landfill. However, the defendants in answer counterclaimed, seeking injunctive relief, alleging that the operation of the landfill was a public nuisance and that adjoining property owners had suffered litter, odor, dust, erosion, silt and leachate discharge as a result of Deffenbaugh's operation of the landfill. The counterclaim brought into question the reasonableness of Deffenbaugh's actual operation of the landfill and alleged interference with the use and enjoyment of surrounding property among other matters. However, on appeal it was determined that the matter was a statutory proceeding for judicial review of a final administrative proceeding and, therefore, the trial court's authority was limited solely to review of the administrative decision to deny the special use permit. The pleadings for declaratory judgment and injunction were determined to be void and were dismissed. *Deffenbaugh Industries, Inc. v. Potts*, 802 S.W.2d 520, 522 (Mo.App.1990).

Pursuant to *Deffenbaugh Industries, Inc. v. Potts*, the only legitimate claim presented in the Petition for Review and Declaratory Judgment was for review of the denial of the special use permit. Being so limited, the question of review related to different facts than the nuisance action of the case at bar. The question of review related solely to the legality of the city's action. The trial court's authority was limited to the Petition for Review and any counterclaim for damages arising out of nuisance would have been outside the trial court's authority to take up within the proceeding on Deffenbaugh's Petition for Review. *Id.* Accordingly, the nuisance action was not a compulsory counterclaim to the Petition for Review.

## DEFAMATION

■ In the defamation action, Deffenbaugh brought suit against respondents Ross and Carol Miller and Joseph Stevinson for defamation in regard to Deffenbaugh's operation of the Woods Chapel Landfill. The record does not reflect that Stevinson Auto was a party to the defamation action.

In its defamation action, Deffenbaugh alleged that it had been damaged by statements of Ross and Carol Miller and Joseph Stevinson in regard to Deffenbaugh's operation of the Woods Chapel Landfill. Deffenbaugh alleged that the defendants had made false statements in regard to the landfill polluting a nearby river; the existence of leachate, odor, methane gas, dust, debris, litter, noise and unsightly trash accumulation; improper removal of ground cover, trees and soil at the landfill; and general pollution of the environment. Deffenbaugh alleged in its petition for defamation that Ross and Carol Miller and Joseph Stevinson created an inference that Deffenbaugh had "intentionally and habitually engaged in con-

duct that violates state law in the operation and maintenance of the above-mentioned landfill, and that [Deffenbaugh] has knowingly and intentionally maintained a nuisance at the site of the landfill."

The nuisance action underlying the case at bar was logically related to the defamation action. Both claims relate to the same operative facts with the same facts necessary to support the nuisance action providing a defense to the defamation action.[6] The same questions of leachate, gas, litter, noise, odor, pollution and improper operation of the Woods Chapel Landfill by Deffenbaugh were determinative to both actions. The nuisance action was in the nature of a compulsory counterclaim to the defamation action.

■ Nonetheless, respondents argue that regardless of whether the nuisance complaint was a compulsory counterclaim to the defamation action, Deffenbaugh failed to preserve its complaint in regard to the improper admission of evidence of nuisance prior to the defamation action. Respondents argue that specific objections were not offered to the presentation of evidence alleged to be improper as it was received.

Deffenbaugh pleaded a compulsory counterclaim as an affirmative defense in the nuisance action, filed a Motion to Dismiss the nuisance action arguing that it was in the nature of a compulsory counterclaim,[7] filed a Motion in Limine seeking to have evidence before the relevant dates excluded, requested a withdrawal instruction in regard to evidence of damages before the relevant dates, and raised the issue in its Motion for New Trial and Judgment Notwithstanding the Verdict.

■ The affirmative defense of compulsory counterclaim was not required to be raised in regard to each piece of evidence presented in order to be preserved. The fact that the defense was plead, presented by Deffenbaugh's Motion to Dismiss, presented in Deffenbaugh's Motion for New Trial and Judgment Notwithstanding the Verdict, and raised on appeal has preserved the issue for review. The issue of compulsory counterclaim was a legal question rather than an evidentiary one. However, even with an evidentiary question, a party is not required to continue to object to preserve a point for appeal when the trial court's position on relevancy of evidence has been clearly established by overruling earlier objections. *Williams v. Bailey,* 759 S.W.2d 394, 397 (Mo. App.1988). Furthermore, a trial court may enter a judgment notwithstanding the verdict when the evidence establishes that an affirmative defense bars recovery even without request for the same from either party. *Vinson v. Vinson,* 725 S.W.2d 121, 123 (Mo. App.1987).

■ Having determined that nuisance was a compulsory counterclaim to Deffenbaugh's defamation action, we next consider the effect on the admissible evidence in the case at bar. In this regard, the compulsory counterclaim rule applies to claims of an adverse party which are already matured at the time of service of the pleading of that party is due. *Myers v. Clayco State Bank,* 687 S.W.2d 256, 263 (Mo.App.1985) (citing *Knight v. M.H. Siegfried Real Estate, Inc.,* 647 S.W.2d 811, 813 (Mo.App.1982)). Maturity is measured in the same way as statutes of limitations are measured—accrual of the cause of action. *Id.*

■ A cause of action accrues and limitations begin to run when the right to sue arises. *Chambers v. Nelson,* 737 S.W.2d 225, 226 (Mo.App.1987). With a temporary nuisance, a right to sue arises at the time of injury with each invasion of a plaintiff's inter-

---

6. Truth is a defense to a claim of defamation. Mo. Const. art. 1, § 8; *Henry v. Halliburton,* 690 S.W.2d 775, 780 (Mo. banc 1985).

7. In regard to Deffenbaugh's Motion to Dismiss, respondents argue that the motion was properly denied because it sought dismissal of the entire action and not just the damages occasioned before the relevant compulsory counterclaim dates. The denial of Deffenbaugh's Motion to Dismiss is

not a matter on appeal. It is sufficient for purposes of the point before us that the trial court could have dismissed respondents' claims for damages for temporary nuisance only as to those matters that occurred prior to the compulsory counterclaim dates pursuant to the motion before it. At a minimum, Deffenbaugh's Motion to Dismiss raised the issue.

est giving rise to a separate cause of action. *Rebel,* 602 S.W.2d at 792.

 In the case at bar, Ross and Carol Miller and Joseph Stevinson filed a counterclaim to Deffenbaugh's defamation action alleging abuse of process and malicious prosecution. In the counterclaim, the Millers and Stevinson alleged that Deffenbaugh operated the landfill in gross violation of the applicable Missouri Department of Natural Resources rules and regulations; that Deffenbaugh operated the landfill in such a manner as to seriously affect the enjoyment by the Millers and Stevinson of their homes; that the landfill stinks, is an eyesore, generates dust and noise, causes windblown pollution of trash, leaks, sludge and sewage; and, in general, that Deffenbaugh had operated the landfill in callous disregard to the rights of the Millers and Stevinson. Since the nuisance action was a compulsory counterclaim, the Millers and Joseph Stevinson had the right to sue for temporary nuisance for injury from each invasion to the date of their counterclaim. It was error for the trial court to allow evidence of damages occurring before respondents Ross and Carol Miller and Joseph Stevinson filed their counterclaim for abuse of process and malicious prosecution in Deffenbaugh's defamation action.[8]

Upon remand for new trial, evidence of damages sustained by Ross and Carol Miller and Joseph Stevinson prior to the filing of their counterclaim in Deffenbaugh's defamation action are to be excluded. However, since Stevinson Auto was not a party to the defamation action, Stevinson Auto is not so limited in its proof of damages.

### III.

 In its fifth point, Deffenbaugh argues that the trial court erred in admitting into evidence a deed whereby Deffenbaugh conveyed a ten acre tract that adjoined the Woods Chapel Landfill to an individual and trust not parties to the case at bar. The deed in question conveyed the ten acres from Deffenbaugh to the Melvin C. Kruse Trust and the Lula Mae Kruse Trust in January of 1992 (Kruse Deed). In the deed, Deffenbaugh retained an easement. The deed provided, in relevant part, as follows:

Grantor hereby reserves to itself, its successors and assigns, tenants and licensees an easement to go upon, over and across the land herein conveyed by means of any and all vibrations, odors, noise or physical airborne particles of any kind, including but not limited to dust, which may ·now or may hereafter, directly or indirectly, arise out of or from any landfill, recycling or similar activity now or hereafter carried on or conducted on the Benefitted Tract (as hereinafter defined) [Woods Chapel] or any present or future private or public access road thereto. The purpose of this reservation is to allow the Grantor and its successors, assigns, tenants and licensees to operate a landfill, recycling or other similar activity free of any claims, legal or equitable, by the Grantee or his successors or assigns that any such operation (as it now is or may hereafter be conducted) is an unreasonable interference with the use and enjoyment of the land herein conveyed as it is now or may hereafter be used or improved.

\*　　\*　　\*　　\*　　\*　　\*

The Grantor covenants, for itself and its successors and assigns, to operate the landfill and recycling or other similar activity in conformity with the applicable laws and regulations of all governmental bodies or agencies having jurisdiction over said activity; provided, however, that the Grantee's and his successor's and assign's exclusive remedy for the Grantor's breach of this covenant shall be the specific enforcement of Grantor's compliance with said laws or regulations.

Deffenbaugh argues that this deed was not relevant or, alternatively, that the probative value of this evidence was outweighed by its prejudicial effect.

---

8. Respondents complain further that the withdrawal instruction was not in proper form and, therefore, the trial court did not err in refusing the instruction. However, since the affirmative defense of the compulsory counterclaim was a question of law rather than an evidentiary question, it is not necessary for us to address this complaint. The withdrawal instruction was not necessary to preserve the issue.

Evidence is relevant if it tends to prove or disprove a fact in issue or if it tends to corroborate other relevant evidence which bears upon the principal issue. *State ex rel. Webster v. Missouri Resource Recovery, Inc.,* 825 S.W.2d 916, 942 (Mo.App.1992). The relevance threshold is satisfied when the truth of the offered fact makes probable the existence of a fact in issue. *Id.* at 943. A determination of relevancy is often subjective and the trial court is accorded broad discretion in ruling on questions of admissibility of evidence. *Sharaga v. Auto Owners Mutual Ins. Co.,* 831 S.W.2d 248, 256 (Mo.App.1992). Only when the trial court's ruling clearly offends the logic of the circumstances or when it becomes arbitrary and unreasonable will an appellate court find an abuse of discretion. *Jennings v. City of Kansas City,* 812 S.W.2d 724, 736 (Mo.App.1991).

Even when evidence is relevant, it is within the discretion of the trial court to exclude the evidence if its probative value is outweighed by its prejudicial effect. *Wood v. St. Louis Public Service Co.,* 362 Mo. 1103, 246 S.W.2d 807, 816–17 (1952).

As stated previously herein, in a nuisance action, the ultimate issue is whether the defendant has made such an unreasonable, unnatural or unusual use of its property so that it substantially impairs the right of another to enjoy his property. *Frank,* 687 S.W.2d at 880. If the matter involves a permanent nuisance, damages are measured by the diminution in value of the plaintiff's property. *Id.* at 883. If the matter involves a temporary nuisance, damages are measured by the diminished use or rental value of the property together with any special costs. *Id.* at 883. Additionally, punitive damages are recoverable upon a showing that a nuisance was knowingly and willfully maintained. *Maryland Heights Leasing, Inc. v. Mallinckrodt, Inc.,* 706 S.W.2d 218, 222 (Mo.App. 1985).

In the case at bar, respondents argue that the deed in question was admissible against Deffenbaugh as an admission.[9] Respondents argue that the deed established that Deffenbaugh perceived a potential for noise, dust and odors going onto surrounding property. Respondents claim that the language of the deed is inconsistent with Deffenbaugh's position at trial that its operation of the landfill was no different than agricultural uses that cause dust, noise and erosion.

When the Kruse deed was executed in January of 1992, Deffenbaugh was already involved in litigation with respondents in the case at bar. The deed does not establish that Deffenbaugh had created or intended to create a nuisance in regard to respondents. The reservation of the easement in question reflects that Deffenbaugh, in selling the land, did not want to give the purchaser the right to join in the litigation against it. This was a matter negotiated between the buyer and seller which is reflective of the willingness of Deffenbaugh to sell and the buyers to purchase at the agreed price. The language of the deed does not establish the intention of Deffenbaugh to create a nuisance, but rather to protect itself in selling its land from litigation similar to that with which it was already involved. Even if the language of the easement were of some probative value, the value would be outweighed by its prejudicial effect and, therefore, would be inadmissible. The trial court erred by admitting the deed as an admission by Deffenbaugh of its intention to create or maintain a nuisance.

The trial court's ruling admitting the Kruse deed into evidence was against the logic of the circumstances. On remand for retrial, the Kruse deed is held to be inadmissible on the grounds addressed herein.

The judgment of the trial court is reversed and this cause remanded for further proceedings in accordance with this opinion.

All concur.

**9.** Respondents also argue that the deed was admissible to show that a stigma had attached to their property. Respondents' argument in this regard is that the easement reserved by Deffenbaugh put prospective property purchasers on notice that the landfill had affected surrounding property, thereby supporting respondents' argument of a stigma. However, since we found that the stigma evidence was not admissible under Deffenbaugh's first point in this opinion, the deed in question was not admissible for purposes of establishing a stigma.