Gayle B. STINSON, et al., Appellants,

v.

E.I. DuPONT de NEMOURS AND COMPANY, Respondent.

No. WD 49263.

Missouri Court of Appeals,
Western District.

June 27, 1995.

Motion for Rehearing and/or Transfer to Supreme Court Denied Aug. 1, 1995.

Application to Transfer Denied Sept. 19, 1995.

Joseph K. Lewis, Jr., Rodney K. Murrow, Kansas City, for appellants.

W. James Foland, Joseph J. Roper, Thomas A. Sheehan, Shughart Thomson & Kilroy, Kansas City, for respondent.

Before SPINDEN, P.J., and ULRICH and SMART, JJ.

ULRICH, Judge.

Gayle and Judy Stinson sued E.I. DuPont De Nemours & Co., Inc. (DuPont), on theories of strict liability—product defect and strict liability—failure to warn. They alleged that Mr. Stinson suffered permanent lung damage caused by inhaling isocyanate paint fumes and spray mists manufactured and sold by DuPont. At the close of plaintiffs' evidence, the trial court directed a verdict against plaintiffs on their claim of strict liability—product defect. Judgment was entered on the jury's verdict in favor of defendant, DuPont, on the remaining strict liability—failure to warn claim. Mr. and Mrs. Stinson appeal.

Gayle Stinson started working for Dart–Kenworth, a truck manufacturer, on January 23, 1967. He worked on the cab trim line. After an eight-month layoff in 1983, he returned to Kenworth's cab trim line in September but was moved to the north end of the line next to the open end of the chassis paint booth where chassis were painted.

Before 1983, Mr. Stinson experienced no breathing problems. Within a week after moving to the north end of the cab trim line, he began noticing symptoms of a respiratory problem. He began coughing and was wheezing the second week. His symptoms were much worse when working at Kenworth through the week and would subside on weekends. In November, Mr. Stinson became very short of breath and almost passed out. He was taken to a hospital and after a four day weekend returned to work. By December, even the smallest amount of exercise caused Mr. Stinson to become short of breath. In January 1984, he was hospitalized because he could not breathe. Mr. Stinson has not returned to work since. His treating physician diagnosed Mr. Stinson's condition as permanent obstructive lung disease.

At trial, Mr. Stinson testified that while working on the north end of the cab trim line, he could see a mist drifting by him from the chassis paint booth when a truck was being painted. He saw the mist once or twice an hour. The foreman of the paint department testified that he received com-

plaints from employees including those in the cab trim department about the smell of paint coming from the booth. Neither Mr. Stinson nor anyone else on the cab trim line were provided respiratory protection.

From 1978 until 1986, DuPont was the primary supplier of paint products used in the chassis spray booth at Kenworth. Ninety-nine percent of the truck chassis were painted with DuPont Imron paints in 1983. Imron paints contained a pigment and one of two activators, 192S or VGY1421, which shortened the drying time of the paint. The activators contained a complex chemical compound called isocyanate. Isocyanates were an integral part of DuPont's paint.

Expert testimony established that isocyanates are extremely toxic substances and inherently dangerous to human health. They are extremely reactive chemicals and react with sulphur, nitrogen, oxygen, and carbon which are found in human lungs. Isocyanates irritate the lungs, and the body's immune system attacks them causing lung damage. Additionally, isocyanates can cause sensitization. With each subsequent exposure to the chemical, a sensitized lung reacts to smaller concentrations. The experts testified that paint containing isocyanates can be used safely if adequate safety precautions are taken such as full body overalls and proper respiratory equipment. Mr. Stinson presented testimony at trial that his exposure to paint containing isocyanates caused his permanent lung damage.

## I

As points one and two, the Stinsons claim that the trial court erred in directing a verdict in favor of DuPont on the strict liability—product defect claim and in refusing to instruct the jury under MAI 24.05 because appellants failed to prove that DuPont's product was defective by design.[1] The Stinsons argue that they made a submissible case in that they proved (1) DuPont's activators, 192S and VGY1421, contained isocyanates; (2) DuPont's products were designed to contain isocyanates; (3) as such, the products

were then in a defective condition and unreasonably dangerous when put to a reasonably anticipated use; (4) the activators containing isocyanates were used in a manner reasonably anticipated; and (5) the Stinsons were damaged as a direct result of the defective condition of the paint products.

■ In determining whether a plaintiff has made a submissible case, the sufficiency of the evidence must be examined. *Nesselrode v. Executive Beechcraft, Inc.,* 707 S.W.2d 371, 378 (Mo. banc 1986); *Blevins v. Cushman Motors,* 551 S.W.2d 602, 606–607 (Mo. banc 1977). The plaintiff is entitled to the most favorable view of all of the evidence and the benefit of all favorable inferences to be fairly drawn from the evidence. *Nesselrode,* 707 S.W.2d at 378; *Coulter v. Michelin Tire Corp.,* 622 S.W.2d 421, 426 (Mo.App. 1981), *cert. denied,* 456 U.S. 906, 102 S.Ct. 1752, 72 L.Ed.2d 162 (1982). "A motion for a directed verdict at the end of plaintiff's evidence should only be granted when all of the evidence and the reasonable inferences which may be drawn are so strongly against plaintiff that there is no room for reasonable minds to differ." *M.P. Indus., Inc. v. Axelrod,* 706 S.W.2d 589, 593 (Mo.App.1986) (citing *McCarthy v. Wulff,* 452 S.W.2d 164, 168 (Mo.1970)).

A manufacturer is liable under strict liability—product defect if the product was in an unreasonably dangerous defective condition when put to a reasonably anticipated use, and the plaintiff was damaged as a direct result of such defective condition as existed when the product was sold. § 537.760, RSMo 1994. The Missouri Supreme Court first adopted strict tort liability in *Keener v. Dayton Elec. Mfg. Co.,* 445 S.W.2d 362 (Mo. 1969). *Keener* was a case involving a defect in the manufacturing process of a product. *Id.* at 364. The Court adopted the rule of strict liability set out in Restatement (Second) of Torts § 402A. *Id.* It explained, "The purpose of such liability is to insure that the costs of injuries resulting from defective products are borne by the manufacturers [and sellers] that put such products on

---

**1.** The Stinsons present a fourth point on appeal which is not addressed, points one, two, and     three being dispositive.

the market rather than by the injured persons who are powerless to protect themselves." *Id.* (quoting *Greenman v. Yuba Power Products, Inc.*, 59 Cal.2d 57, 27 Cal. Rptr. 697, 377 P.2d 897, 901 (Cal.1963)).

Eight years later in *Blevins v. Cushman Motors*, 551 S.W.2d 602 (Mo. banc 1977), the Court held that the doctrine of strict liability applies with equal force to product liability cases involving injuries caused by a product which is unreasonably dangerous as designed. *Id.* at 607. It reasoned that "a product may be equally defective and dangerous if its design subjects protected persons to unreasonable risks as if its manufacture does so." *Id.* (quoting *Pike v. Frank G. Hough Co.*, 2 Cal.3d 465, 85 Cal.Rptr. 629, 636, 467 P.2d 229, 236 (Cal. banc 1970)).

■ To establish liability in a design defect case, the plaintiff bears the burden of proving that the product, as designed, is unreasonably dangerous and therefore "defective." *Nesselrode*, 707 S.W.2d at 375. Under Missouri's strict tort liability, a product's design is deemed defective when a preponderance of evidence shows that the design renders the product unreasonably dangerous. *Id.* at 377 (citing *Elmore v. Owens–Illinois, Inc.*, 673 S.W.2d 434 (Mo. banc 1984)). In *Elmore v. Owens–Illinois, Inc.*, an asbestosis case brought under the theory of defective design, the Missouri Supreme Court pointed out that the plaintiffs had satisfied their burden of proving that the design of the product was defective "when they proved that it was unreasonably dangerous as designed." *Elmore*, 673 S.W.2d at 438.

In *Wilson v. Danuser Mach. Co.*, 874 S.W.2d 507 (Mo.App.1994), the Southern District recently reviewed the evidence in a design defect case to determine if the plaintiff made a submissible case under strict liability—product defect. The court explained that "[plaintiff] had no burden to establish product failure or malfunction." *Wilson*, 874 S.W.2d at 513. He met his required burden by showing the product, a log splitter, as designed, was unreasonably dangerous and therefore "defective." *Id.*

In the present case, DuPont argues that the defective condition and the dangerous character of a product are two distinct elements that must be proven in plaintiffs' case under the strict liability doctrine. It contends that the Stinsons did not prove the paint containing isocyanates was defective and, therefore, did not make a submissible strict liability—product defect case. DuPont's authority for this argument is *Lietz v. Snyder Mfg. Co.*, 475 S.W.2d 105 (Mo.1972). *Lietz*, however, is inapplicable to the present case for two reasons. First, it was a manufacturing defect case, not a design defect case. The plaintiffs alleged that a gym bar was inadequately and insufficiently constructed for use in the manner directed in the instructions. *Id.* at 106. Secondly, the argument in *Lietz* involved conversing a verdict-directing instruction rather than proving the separate elements in a strict liability action. *Id.* at 109. In Missouri, the burden of proving that a product's design is defective is satisfied when the product is proven unreasonably dangerous. *Wilson*, 874 S.W.2d at 513.

■ The Stinsons presented evidence that DuPont's activators, 192S and VGY1421, contained isocyanates; DuPont's products were designed to contain isocyanates; isocyanates are the second most toxic substance known in the world today; isocyanates are the most common cause of occupational asthma in this country; isocyanate exposure can create permanent lung damage; and seven percent of the people who are exposed to these kinds of isocyanates become sensitized. The Stinsons made a submissible case that DuPont's paint containing isocyanates was unreasonably dangerous and therefore "defective." *See Ray v. Upjohn Co.*, 851 S.W.2d 646 (Mo.App. 1993) (A plaintiff who was exposed at work to a chemical containing isocyanates sufficiently established that the chemical was unreasonably dangerous to make a submissible case of strict liability—product defect and strict liability—failure to warn. *Id.* at 655). The trial court erred in directing a verdict against the Stinsons on their claim of strict liability—product defect and should have allowed the jury to consider the question.

**II**

■ The Stinsons next claim that the trial court erred in excluding the 1985 product

labels for DuPont's activators. The Court excluded the labels for lack of relevancy and because it determined that any probative value was outweighed by the prejudicial effect of the evidence. The Stinsons claim that the subsequent warning labels of the activators were relevant (1) as substantive evidence of the defective unreasonably dangerous condition of the product at the time of Mr. Stinson's injury, (2) as substantive evidence of the inadequacy of DuPont's warnings at the same time, and (3) as impeachment evidence.

A trial court's determination of relevancy and its ruling on the admissibility or exclusion of evidence is accorded substantial deference and will not be disturbed absent an abuse of discretion. *Brown v. Hamid*, 856 S.W.2d 51, 56 (Mo. banc 1993); *Stevinson v. Deffenbaugh Indus.*, 870 S.W.2d 851, 860 (Mo.App.1993). "Only when the trial court's ruling clearly offends the logic of the circumstances or when it becomes arbitrary and unreasonable will an appellate court find an abuse of discretion." *Stevinson*, 870 S.W.2d at 860. Evidence is relevant if it tends to prove or disprove a fact in issue or corroborates other relevant evidence. *Brown*, 856 S.W.2d at 56.

Generally, evidence of subsequent remedial measures is inadmissible in negligence actions. *Pollard v. Ashby*, 793 S.W.2d 394, 401 (Mo.App.1990) (citing *Hefele v. National Super Markets, Inc.*, 748 S.W.2d 800, 803 (Mo.App.1988)). Federal Rule of Evidence 407 explains the rule regarding the admissibility of post-accident remedial measures:

When after an event, measures are taken which, if taken previously, would have made the event less likely to occur, evidence of the subsequent measures is not admissible to prove negligence or culpable conduct in connection with the event. This Rule does not require the exclusion of evidence as subsequent measures when offered for another purpose, such as proving ownership, control, or feasibility of precautionary measures, if controverted, or impeachment.

Fed.R.Evid. 407. There are two reasons for prohibiting the admission of subsequent remedial measures to show negligence. First,

if precautions taken could be used as evidence of previous improper conditions, no one, after an accident, would make improvements. *Pollard*, 793 S.W.2d at 401 (citing *Gignoux v. St. Louis Public Serv.*, 180 S.W.2d 784, 787 (Mo.App.1944)). Secondly, subsequent changes are irrelevant as to what the previous condition was. *Id.* This rule, however, is inapplicable in strict liability cases because (1) the culpability of the defendant is irrelevant in such actions and (2) the purposes of the rule would not be served. *Pollard*, 793 S.W.2d at 402.

In *Pollard v. Ashby*, a patient brought strict liability—product defect, strict liability—failure to warn, and negligent failure to warn actions against a drug manufacturer after suffering injury allegedly resulting from the use of a prescription drug. *Pollard*, 793 S.W.2d at 397. The defendant argued that the trial court erroneously permitted the patient to introduce evidence of post-injury remedial measures, subsequent warnings, and tests occurring after the patient's injury. *Id.* at 401. The Eastern District held that subsequent remedial measures were admissible in strict liability actions and were probative of whether there was a defect in the product at the time the plaintiff was injured. *Id.* at 402–403.

In the present case, the warning on DuPont's activator labels at the time of Mr. Stinson's injury stated that the product could cause an allergic respiratory reaction. The Stinsons wished to introduce subsequent activator labels that warned of the possibility of permanent lung injury. The new labels also instructed the user to wear an air respirator. The subsequent labels were relevant to and probative of whether the activators were unreasonably dangerous, and thus defectively designed, and whether the warnings were adequate at the time of Mr. Stinson's injury.

"Even when evidence is relevant, it is within the discretion of the trial court to exclude the evidence if its probative value is outweighed by its prejudicial effect." *Stevinson*, 870 S.W.2d at 860 (citing *Wood v. St. Louis Public Serv. Co.*, 362 Mo. 1103, 246 S.W.2d 807 (1952)). This rule, however, does not offer protection against evidence that is merely prejudicial in the sense of being detrimental to a party's case. *Wade v. Haynes*,

663 F.2d 778, 783 (8th Cir.1981), *cert. granted,* 456 U.S. 924, 102 S.Ct. 1968, 72 L.Ed.2d 439, *affirmed,* 461 U.S. 30, 103 S.Ct. 1625, 75 L.Ed.2d 632 (1983). Instead, it applies only if the evidence is unfairly prejudicial and tends to suggest a decision on an improper basis. *Id.* DuPont argues that the admission of subsequent remedial measures would have been unduly prejudicial. Logically, the admission of the labels would probably have been detrimental to DuPont's case. However, considering that Rule 407 does not apply in strict liability cases, recognizing that the subsequent label changes relate to the safety of the activators, and adopting the rationale expressed in *Pollard,* admission of the subsequent remedial measures would not have been unduly prejudicial. Exclusion of the 1985 warning labels was error.

The judgment of the trial court is reversed, and the case is remanded for a new trial on plaintiff's theories of strict liability—product defect and strict liability—failure to warn.

All concur.